**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

        *Plaintiff*,

    v.

KKR & CO. INC., KKR & CO. GP LLC, KOHLBERG KRAVIS ROBERTS & CO. L.P., KKR AMERICAS FUND XII L.P., KKR AMERICAS FUND XII (KESTREL) L.P., KKR AMERICAS FUND XII (THRIVE) L.P., KKR APPLE AGGREGATOR L.P., KKR CHORD IP AGGREGATOR L.P., KKR CORE HOLDING COMPANY LLC, KKR CORE II HOLDING COMPANY LLC, KKR DCIF LOWER ENTITY III SCSP, KKR GLOBAL IMPACT FUND SCSP, KKR GLOBAL INFRASTRUCTURE INVESTORS IV USD (APPLE) L.P., KKR NORTH AMERICA FUND XIII SCSP, and KKR OBSIDIAN AGGREGATOR LP,

        *Defendants*.

Case No. 1:25-cv-343
[rel. 1:25-cv-448]

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................4

    A.    The Hart-Scott-Rodino Act Requires Only That Filers Submit "A Reasonable Number Of Genuinely Important Documents" .....................................4

    B.    The FTC Promulgates Vague Regulations And Inconsistent Guidance .................6

    C.    The Government's Complaint And Investigation Of KKR .....................................8

ARGUMENT ..........................................................................................................................9

    I.    The Complaint Should Be Dismissed Because The Government Has Neither Alleged That KKR Failed To "Substantially Comply" With The HSR Act Nor That KKR Failed To Submit Documents "Necessary And Appropriate" To Evaluate A Transaction....................................................................9

    II.    The HSR Regulations Exceed The Government's Statutory Authority And Are Both Unconstitutionally Vague And Arbitrarily Applied...............................13

        A.    The Relevant Regulations Exceed The Government's Statutory Authority Both Facially And As Applied .....................................................13

        B.    The HSR Regulations Are Unconstitutionally Vague And Arbitrarily Applied.......................................................................................20

    III.    Counts 11 And 13 Should Be Dismissed Because There Is No HSR Violation.................................................................................................................26

CONCLUSION.....................................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Axon Enter. Inc.*,
    FTC Docket No. D9389 (Jan. 3, 2020) ........................................................................5

*Bates v. United States*,
    522 U.S. 23 (1997) ....................................................................................................28

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................11

*BMW of N.A., Inc. v. Gore*,
    517 U.S. 559 (1996) ..................................................................................................21

*Carr v. United States*,
    560 U.S. 438 (2010) ..................................................................................................28

*Coinbase, Inc. v. SEC*,
    126 F.4th 175 (3d Cir. 2025) ....................................................................................21

*Council of Parent Att'ys & Advocs., Inc. v. DeVos*,
    365 F. Supp. 3d 28 (D.D.C. 2019) ...........................................................................20

*Doe v. County of Rockland*,
    2023 WL 6199735 (S.D.N.Y. Sept. 22, 2023) ...........................................................5

*Edwards v. Sequoia Fund, Inc.*,
    938 F.3d 8 (2d Cir. 2019) ..........................................................................................12

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ..............................................................................................3, 21

*Field Day, LLC v. County of Suffolk*,
    463 F.3d 167 (2d Cir. 2006) ......................................................................................15

*FTC v. Ill. Cereal Mills, Inc.*,
    691 F. Supp. 1131 (N.D. Ill. 1988) ...........................................................................30

*FTC v. McCormick & Co.*,
    No. 88-cv-01128 (D.D.C. Apr. 26, 1988) ................................................................29

*Goe v. Zucker*,
    43 F.4th 19 (2d Cir. 2022) ..........................................................................................5

*Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*,
968 F.3d 454 (5th Cir. 2020) ................................................. 14

*Hill v. Colorado*,
530 U.S. 703 (2000) .......................................................... 21

*Huddleston v. United States*,
415 U.S. 814 (1974) .......................................................... 27

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
559 U.S. 573 (2010) .......................................................... 28

*Johnson v. United States*,
576 U.S. 591 (2015) .......................................................... 24

*Langhorne v. Ashcroft*,
377 F.3d 175 (2d Cir. 2004) ................................................. 10

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......................................................20, 28

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) .......................................................... 28

*Maldonado v. Town of Greenburgh*,
460 F. Supp. 3d 382 (S.D.N.Y. 2020) ......................................... 2

*Mattox v. FTC*,
752 F.2d 116 (5th Cir. 1985) ................................................ 30

*Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*,
60 F.4th 956 (5th Cir. 2023) ..............................................14, 20

*Michigan v. EPA*,
576 U.S. 743 (2015) .......................................................... 20

*Quituizaca v. Garland*,
52 F.4th 103 (2d Cir. 2022) ................................................. 30

*Solomon v. Fordham Univ.*,
2024 WL 3273112 (S.D.N.Y. July 2, 2024) ..................................... 17

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) .......................................................... 26

*United States v. Automatic Data Processing, Inc.*,
No. 96-cv-606 (D.D.C. Mar. 27, 1996) ........................................ 29

*United States v. Blackstone Cap. Partners II Merchant Banking Fund L.P.*,
  No. 99-00795 (D.D.C. March 30, 1999) ................................................................. 29

*United States v. Blavatnik*,
  168 F. Supp. 3d 36 (D.D.C. 2016) ....................................................................... 30

*United States v. Davis*,
  588 U.S. 445 (2019) ........................................................................................... 22

*United States v. Farley*,
  11 F.3d 1385 (7th Cir. 1993) .............................................................................. 29

*United States v. The Hearst Trust*,
  No. 01-02119 (D.D.C. Oct. 11, 2001) ................................................................. 29

*United States v. Iconix Brand Grp., Inc.*,
  No. 07-1852 (D.D.C. Oct. 15, 2007) ................................................................... 29

*United States v. ITT Cont'l Baking Co.*,
  420 U.S. 223 (1975) ........................................................................................... 27

*United States v. Wasylyshyn*,
  979 F.3d 165 (2d Cir. 2020) ............................................................................... 14

*West Virginia v. EPA*,
  597 U.S. 697 (2022) ........................................................................................... 14

## Rules / Statutes

15 U.S.C. § 2 ............................................................................................................... 27

15 U.S.C. § 3 ............................................................................................................... 29

15 U.S.C. § 7a-3 .......................................................................................................... 29

15 U.S.C. § 18a ..................................................................................................... *passim*

16 C.F.R. § 801.1 ........................................................................................................ 26

16 C.F.R. § 803.20 ........................................................................................................ 7

16 C.F.R. § 803.30 ........................................................................................................ 7

16 C.F.R. § 803 Appendix B (June 27, 2019) ................................................. 6, 16, 22

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 2

**Other Authorities**

122 Cong. Rec. 30,876 (1976) ........................................................................... 3

43 Fed. Reg. 33450 (July 31, 1978) ............................................................ *passim*

59 Fed. Reg. 30545 (June 14, 1994) ................................................................ 17

78 Fed. Reg. 68705 (Nov. 15, 2013) ............................................................... 29

*Black's Law Dictionary* (12th ed. 2024) ......................................................... 27

FTC, Item 4(c) Tip Sheet (Nov. 28, 2016),
  https://www.ftc.gov/system/files/attachments/hsr-resources/4ctipsheet.pdf ................... *passim*

H.R. Rep. No. 94-1373 (July 28, 1976) ........................................................... 30

FTC, HSR Informal Interpretation 0706019 (June 26, 2007),
  https://www.ftc.gov/legal-library/browse/hsr-informal-
  interpretations/0706019 .......................................................................... 8

FTC, HSR Informal Interpretation 0802014 (Mar. 3, 2008),
  https://www.ftc.gov/legal-library/browse/hsr-informal-
  interpretations/0802014 ....................................................................... 8, 24

FTC, HSR Informal Interpretation 1301011 (Jan. 14, 2013),
  https://www.ftc.gov/legal-library/browse/hsr-informal-
  interpretations/1301011 ......................................................................... 23

FTC, HSR Informal Interpretation 1603004 (Mar. 23, 2016),
  https://www.ftc.gov/legal-library/browse/hsr-informal-
  interpretations/1603004 ....................................................................... 8, 23

FTC, HSR Informal Interpretation 1906008 (June 26, 2019),
  https://www.ftc.gov/legal-library/browse/hsr-informal-
  interpretations/1906008 .......................................................................... 8

FTC, HSR Informal Interpretation 1908006 (Aug. 19, 2019),
  https://www.ftc.gov/legal-library/browse/hsr-informal-
  interpretations/1908006 ......................................................................... 23

FTC, HSR Informal Interpretation 2007004 (July 17, 2020),
  https://www.ftc.gov/legal-library/browse/hsr-informal-
  interpretations/2007004 ....................................................................... 8, 23

FTC, HSR Informal Interpretation 2105006 (May 17, 2021),
  https://www.ftc.gov/legal-library/browse/hsr-informal-
  interpretations/2105006 .......................................................................... 8

FTC, HSR Informal Interpretation 1205015 (May 22, 2012),
https://www.ftc.gov/legal-library/browse/hsr-informal-
interpretations/1205015 ............................................................................. 23

FTC, HSR Informal Interpretation 1810002 (Oct. 24, 2018),
https://www.ftc.gov/legal-library/browse/hsr-informal-
interpretations/1810002 ............................................................................. 23

FTC, HSR Informal Interpretation 1812001 (Dec. 12, 2018),
https://www.ftc.gov/legal-library/browse/hsr-informal-
interpretations/1812001 ............................................................................. 19

FTC, HSR Informal Interpretation 1709011 (Sept. 22, 2017),
https://www.ftc.gov/legal-library/browse/hsr-informal-
interpretations/1709011 ............................................................................. 23

FTC, HSR Introductory Guide I (Aug. 2024),
https://www.ftc.gov/sites/default/files/attachments/premerger-introductory-
guides/guide1.pdf ................................................................................. 22, 28

Joe Sims & Deborah P. Herman, *The Effect of Twenty Years of Hart-Scott-Rodino
on Merger Practice*, 65 Antitrust L.J. 865 (1997) .................................... 14

*McCormick Bid Is Dropped*, Reuters, May 24, 1988,
https://www.nytimes.com/1988/05/24/business/company-news-mccormick-
bid-is-dropped.html ................................................................................... 29

*Oxford English Dictionary* (2d ed. 1989) ........................................................ 27

S. Rep. No. 94-803 (May 6, 1976) ......................................................... 5, 14, 30

Statement of Commissioner Melissa Holyoak, Final Premerger Notification Form
and the Hart-Scott-Rodino Rules Commission File No. P239300 (Oct. 10,
2024), https://www.ftc.gov/system/files/ftc_gov/pdf/holyoak-hsr-rule-
statement.pdf ............................................................................................... 7

*Webster's Third New Int'l Dictionary* (1961) ................................................. 27

Defendants KKR & CO. INC., KKR & CO. GP LLC, KOHLBERG KRAVIS ROBERTS & CO. L.P., KKR AMERICAS FUND XII L.P., KKR AMERICAS FUND XII (KESTREL) L.P., KKR AMERICAS FUND XII (THRIVE) L.P., KKR APPLE AGGREGATOR L.P., KKR CHORD IP AGGREGATOR L.P., KKR CORE HOLDING COMPANY LLC, KKR CORE II HOLDING COMPANY LLC, KKR DCIF LOWER ENTITY III SCSP, KKR GLOBAL IMPACT FUND SCSP, KKR GLOBAL INFRASTRUCTURE INVESTORS IV USD (APPLE) L.P., KKR NORTH AMERICA FUND XIII SCSP, and KKR OBSIDIAN AGGREGATOR LP (together, "KKR") move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## INTRODUCTION

With this lawsuit, the government seeks to impose draconian, unconstitutional, and unprecedented penalties on KKR for purported errors in its compliance with premerger notification requirements that the government itself concedes are "confusing."  The Complaint, which follows a sprawling, three-year investigation, alleges errors in 16 of KKR's filings pursuant to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended ("the HSR Act" or "Act").  And yet the Complaint itself makes clear that the purported errors were immaterial.  The HSR Act is simply a notice requirement.  And the fact is that KKR filed premerger notifications and gave the government actual notice *each and every* time it bought or sold a company in a qualifying transaction.  Moreover, *not a single transaction* at issue in this case is actually anticompetitive, and the government does not challenge *any* of the deals on substantive antitrust grounds.

The Complaint nonetheless seeks extraordinary penalties—potentially totaling hundreds of millions of dollars—for what were, at most, ministerial mistakes.  That amount dwarfs any penalty ever imposed in the nearly five decade history of the HSR Act.  And it is based on absurd

1

interpretations of the statute that fly in the face of the Act's language, its history and purpose, and the reading the government itself has given the statute for its entire history—until now.

Equally telling is what the Complaint does *not* allege. The government does *not* allege that the purportedly defective filings called into question its review of the proposed transactions—because they did not. And it does *not* allege that any of the prior purported errors were intentional—because they were not. Unable to make such allegations, the government instead *hints* that something nefarious was afoot. As just one example, the Complaint—and the government's accompanying press release—quotes an email exchange in which a senior KKR employee seems to support a junior employee's proposal to withhold certain documents: "I believe in less is more too . . . ." Dkt. 1 ("Compl.") at 2. But the implication is false. The junior employee had already confirmed in that same email that "***We'll send***" those documents. And the government's selective quotation further hides the fact that the executive *confirmed* that the employee *should* produce the document in question. In fact, the deal partner wrote: "I believe in less is more too . . . ***but all good here on the IC memos***"—indicating that the documents should be shared with counsel for potential inclusion in the filing. The government's deceptive edit seeks to transform evidence of KKR's compliance with the HSR Act into an implication of wrongdoing.[1] The full exchange literally says the *opposite* of what the Complaint alleges.

The Court should dismiss this lawsuit for at least four reasons.

<u>First</u>, the government's effort to punish KKR for purported imperfect compliance with the HSR Act fails as a matter of law because it is inconsistent with the plain text of the Act. The

---

[1] Because the government chose to cite this email in its pleading, the Court can consider the full statement in the context of this motion to dismiss. *See Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 392 (S.D.N.Y. 2020) ("[I]n adjudicating a Rule 12(b)(6) motion, a court may consider the pleadings, their exhibits, statements or documents incorporated by reference in the pleadings.").

Complaint does not allege, as the statute requires, that KKR failed to "substantially comply" with the Act, or that the documents it purportedly failed to submit were "necessary and appropriate" to evaluate the transactions at issue. *See, e.g.*, 122 Cong. Rec. 30,876 (1976) (The HSR bill "does not require absolute and complete compliance with either the required pre-merger notification form or any subsequent request for additional information[.]"). For that reason alone, the Complaint fails at the threshold and must be dismissed.

Second, to the extent the government contends that the applicable standard is *not* substantial compliance (as the Act provides) but rather perfection (as the Complaint suggests), the Complaint must be dismissed because the relevant regulations, at least as applied here, exceed the government's statutory authority.

Third, those regulations, as construed by the government's own interpretive guidance, are unconstitutionally vague, and their application here is arbitrary. Indeed, the government *itself* concedes that its guidelines for complying with the HSR Act are "confusing." But the law is clear that "regulated parties should know what is required of them so they may act accordingly [.]" *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). The government's concession thus requires that the Complaint be dismissed. Likewise, the government contends here, for the first time, that a company can remain on the hook for daily monetary penalties if the government concludes, after a transaction closes, that it failed to comply *perfectly* with those *pre*merger notification requirements. The government's contention applies even to transactions that are not alleged to be anticompetitive, are unquestionably permissible, and even where the government has received all the documents to which it contends it is entitled. That cannot be true, and neither the government itself, nor any court, has previously construed the Act to have such sweeping scope.

Finally, for two of the counts, the Complaint does not even allege that the transactions closed, because they did not. But HSR Act penalties are available only when an acquisition is completed and does not comply with the Act. There is no "acquisition" when a deal is abandoned. Accordingly, these counts fail as a matter of law.

For all these reasons, the Complaint should be dismissed.

## BACKGROUND

A.     **The Hart-Scott-Rodino Act Requires Only That Filers Submit "A Reasonable Number Of Genuinely Important Documents"**

In 1976, Congress enacted the HSR Act to provide the federal antitrust agencies an opportunity to review certain mergers and acquisitions before they are consummated to determine whether they are anticompetitive and thus violate Section 7 of the Clayton Act. The HSR Act provides that, before closing a qualifying transaction, the parties must file a Notification and Report Form ("HSR filing") with the Antitrust Division and the Federal Trade Commission ("FTC"), and wait until a prescribed period—typically 30 days—has elapsed. Compl. ¶ 3.

The HSR filing simply provides the government notice of a potential transaction. By its terms, the Act requires, in the first instance, only a limited amount of basic information. Section 18a(d)(1) provides that the notification "shall . . . contain such documentary material and information relevant to a proposed acquisition as is *necessary and appropriate* to enable the [FTC] and the Assistant Attorney General to determine whether such acquisition may, if consummated, violate the antitrust laws." 15 U.S.C. § 18a(d)(1) (emphasis added). If the government has any concern about possible anticompetitive effects, it can issue a "Second Request" prior to the expiration of the initial waiting period, triggering an extensive and lengthy investigation.[2] The

---

[2] *Doe v. County of Rockland*, 2023 WL 6199735, at *2 (S.D.N.Y. Sept. 22, 2023) ("[I]t is axiomatic that a court may take judicial notice of relevant law and administrative regulations . . . on a motion to dismiss.").

Second Request is broader in scope. The statute provides that the government may request "additional information or documentary material *relevant* to the proposed acquisition." *Id.* § 18a(e)(1)(A) (emphasis added). Even then, however, the government may not seek information that is "unreasonably cumulative, unduly burdensome, or duplicative." *Id.* § 18a(e)(1)(b)(i)(I). These requirements are designed to give the antitrust agencies "a meaningful opportunity to seek a preliminary injunction" before an allegedly anticompetitive merger is consummated. S. Rep. No. 94-803, at 65 (May 6, 1976).[3] There is no allegation here that a preliminary injunction was remotely warranted for the transactions at issue, let alone that KKR deprived the antitrust authorities of a reasonable opportunity to seek one.

The Act establishes two interrelated enforcement mechanisms, which must be read together and in the context of the "whole law, and [] its object and policy." *Langhorne v. Ashcroft*, 377 F.3d 175, 180 (2d Cir. 2004). Section 18a(g)(1) is a catch-all provision that allows the government to seek monetary penalties for an acquisition if a party "fails to comply with any provisions" of the Act. It thus authorizes penalties if a "person . . . acquire[s]" another person's voting securities or assets without, for example, observing the full waiting period. Section 18a(g)(2), in turn, deals specifically with violations of the notification requirement, such as those the government alleges here. It provides that if a party "fails *substantially* to comply with the notification requirement . . . or any request for the submission of additional information or documentary material . . . within the waiting period," the district court "may" order compliance or other appropriate equitable relief, and "shall extend the waiting period . . . until there has been *substantial compliance*."

---

[3] *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022) ("[A]s a fundamental matter, courts may take judicial notice of legislative history"). The government also can (and does) challenge transactions after they have closed. *See, e.g.*, Complaint, Axon Enter. Inc., FTC Docket No. D9389 (Jan. 3, 2020) (challenging a non-reportable consummated merger). Thus, the HSR process is not the government's only tool to address allegedly anticompetitive mergers and acquisitions.

**B.      The FTC Promulgates Vague Regulations And Inconsistent Guidance**

The HSR Act authorizes the FTC, with the concurrence of the Assistant Attorney General for the Antitrust Division, to promulgate rules to ensure that HSR filings contain the "necessary and appropriate" documents and information the Act requires.  *See* 15 U.S.C. § 18a(d)(1); Compl. ¶ 6.  Along with implementing rules, the FTC in 1978 published the first Premerger Notification and Report Form, which has been modified since then.  Compl. ¶ 6.  Among other requirements, Item 4(c) of the form calls for: "*all studies, surveys, analyses and reports* which were prepared *by or for any officer(s) or director(s)* (or, in the case of unincorporated entities, individuals exercising similar functions) *for the purpose of evaluating* or analyzing the acquisition with respect to market shares, competition, competitors, markets, potential for sales growth or expansion* into product or geographic markets."  Appendix B to 16 C.F.R. Part 803 at VI (June 27, 2019), https://www.reginfo.gov/public/do/DownloadDocument?objectID=148754001 ("HSR Form Instructions") (emphasis added); FTC, Item 4(c) Tip Sheet at 1 (Nov. 28, 2016), https://www.ftc.gov/system/files/attachments/hsr-resources/4ctipsheet.pdf ("Item 4(c) Tip Sheet"); *see also* Compl. ¶ 7.  Notwithstanding Item 4(c)'s use of the word "all," the purpose of the Item 4 requirement is simply to provide the antitrust agencies a "*reasonable number* of genuinely important* documents" to investigate whether a transaction may impact competition. 43 Fed. Reg. 33450, 33526 (July 31, 1978) (emphasis added).  The regulations acknowledge that "agencies may not gain access to some relevant documents at the time of their initial review."  43 Fed. Reg. at 33526.

In keeping with these expectations, the Act has never been understood to require comprehensive, litigation-style discovery collections, because such a requirement would burden the filing parties and conflict with Congress's intent to permit "effective preliminary antitrust review."  43 Fed. Reg. at 33526.  As one member of the FTC recently explained, "The status quo

for HSR filings . . . typically does not require a forensic collection."  Statement of Commissioner Melissa Holyoak, Final Premerger Notification Form and the Hart-Scott-Rodino Rules Commission File No. P239300 (Oct. 10, 2024), https://www.ftc.gov/system/files/ftc_gov/pdf/holyoak-hsr-rule-statement.pdf.  Rather, the Act is specifically structured to provide limited notice materials with the filing, and to allow the government to seek additional materials should it consider them necessary.  *See* 43 Fed. Reg. at 33526 (discussing, among other things, requests for information pursuant to 16 C.F.R. § 803.20 and "other discovery procedures").  Even then, as the HSR Act's chief architect, Representative Rodino, explained:  "[A] government request for material of dubious or marginal relevance . . . might well be unreasonable.  In these cases, a failure to comply with such unreasonable portions of a request would not constitute a failure to 'substantially comply' with the bill's requirements." 122 Cong. Rec. 30,877 (1976).  Beyond rulemaking, the FTC provides formal and informal interpretations concerning whether a party has met the requirements of the Act.  *See* 16 C.F.R. § 803.30.  In the nearly five decades since the Act became law, the FTC has issued voluminous, and at times conflicting, interpretations of what Item 4 requires.

As one example, the FTC's "informal position for many years" has been that Item 4(c) requires the submission of only final versions of documents, unless a draft document was submitted to the company's full board of directors (or equivalent).  In that case, the FTC explains that the draft "ceases to be a draft," even if it remains in draft form and a true final version is also prepared and submitted with the HSR filing.  Item 4(c) Tip Sheet at 4.  As another example, the FTC's guidance permits parties to redact board meeting minutes to include only Item 4-relevant content.  But the FTC has not explicitly extended this practical allowance to other types of

documents—such as board presentations—even if they also contain irrelevant material.[4] As a third example, the FTC *exempts* from disclosure text messages, instant messages, videos, and voice mails that contain Item 4 information. But it requires that emails with such information be produced.[5]

The FTC has never explained these inconsistencies, save to acknowledge that "[r]esponding to Item 4(c) *can be confusing for filers* because the item's broad language is subject to a range of interpretations." Item 4(c) Tip Sheet at 1 (emphasis added).

## C.    The Government's Complaint And Investigation Of KKR

The government began its investigation of KKR in early 2022. Compl. ¶ 14. For nearly three years, it conducted a sweeping inquiry into KKR's HSR filings. KKR cooperated fully, including by producing hundreds of thousands of documents totaling approximately one million pages. Compl. ¶ 18.

The Complaint challenges 16 transactions for which KKR filed premerger notifications since 2021. Compl. ¶ 58. As to 14 of those transactions, the Complaint alleges that certain of KKR's HSR filings were "incomplete" because they did not include *all* of the documents purportedly responsive under Item 4(c) of the Notification and Report Form, and that in some filings certain documents were redacted in ways that were inconsistent with what Item 4(c)

---

[4]    *Compare* FTC, HSR Informal Interpretation 2105006 (May 17, 2021), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/2105006, *with* FTC, HSR Informal Interpretation 0802014 (Mar. 3, 2008), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/0802014.

[5]    *See* FTC, HSR Informal Interpretation 1906008 (June 26, 2019), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/1906008 (text messages); FTC, HSR Informal Interpretation 2007004 (July 17, 2020), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/2007004 (instant messages); FTC, HSR Informal Interpretation 1603004 (Mar. 23, 2016), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/1603004 (videos); FTC, HSR Informal Interpretation 0706019 (June 26, 2007), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/0706019 (voice mails).

permits. Compl. ¶¶ 17, 21. The Complaint does not allege that any of these filings failed to "substantially comply" with the HSR Act. Nor does the Complaint allege that any of the transactions resulted in a lessening of competition in violation of Section 7 of the Clayton Antitrust Act, even after the government has all the materials it asserts should have been produced with the HSR filings.[6] Indeed, two of the 16 transactions—TalentNeuron, *see* Compl. ¶¶ 14-16, 126-130, and Equus I, *see* Compl. ¶¶ 116-120—did not close. No "voting securities or assets of any other person" were "acquire[d]" in connection with either deal. 15 U.S.C. § 18a(a).

## ARGUMENT

I.   **The Complaint Should Be Dismissed Because The Government Has Neither Alleged That KKR Failed To "Substantially Comply" With The HSR Act Nor That KKR Failed To Submit Documents "Necessary And Appropriate" To Evaluate A Transaction**

The HSR Act, by its plain terms, does not require the production of *all* potentially responsive documents as part of an initial HSR filing. It requires only "such documentary material and information relevant to a proposed acquisition as is *necessary and appropriate* . . . to determine whether [an] acquisition may, if consummated, violate the antitrust laws." 15 U.S.C. § 18a(d)(1) (emphasis added). Thereafter, the government is permitted to seek additional documents in the context of a Second Request, provided that they, too, are "relevant" to the determination of whether a proposed acquisition is anticompetitive. *Cf. id.* § 18a(e)(1)(A) (allowing the government to seek additional "relevant" information without the limiting terms "necessary and appropriate"). And, critically, the HSR Act requires only "substantial" compliance

---

[6] One of the transactions—AppLovin—was a restructuring among existing stockholders, *not* a combination, and thus could not even conceivably have resulted in a lessening of competition. While the Complaint alleges that KKR did not initially make required filings for the AppLovin restructuring and a subsequent AppLovin acquisition, KKR discovered the issue and self-reported it to the FTC more than three years ago, and the Complaint acknowledges that KKR made corrective filings. Compl. ¶ 25.

with these premerger notification requirements before a transaction is permitted to close. *Id.* § 18a(g)(2); *see also* 122 Cong. Rec. 30,877 (1976) ("[A] government request for material of dubious or marginal relevance . . . might well be unreasonable. In these cases, a failure to comply with such unreasonable portions of a request would not constitute a failure to 'substantially comply' with the bill's requirements.").

Section 18a(g)(2) definitively limits what can be required in the notification. It necessarily cabins what the government can seek penalties for under the catch-all civil penalties provision of Section 18a(g)(1), when the claim is based on a failure to comply with the "notification requirement" under Section 18a(a). Reading subsections (g)(1) and (g)(2) together, as they must be read, confirms that subsection (g)(1) does not mention "substantial compliance" only because it applies to all of the Act's requirements, including those for which the "substantial compliance" standard is not applicable. *Langhorne v. Ashcroft*, 377 F.3d 175, 180 (2d Cir. 2004) ("It is axiomatic that a section of a statute should not be read in isolation from the context of the whole Act [.]"). For example, subsection (g)(1) is the vehicle by which the government could seek penalties for closing a transaction without observing the applicable waiting period.

The "substantial compliance" requirement is the standard by which the notification requirement is measured. Applying a strict liability standard under subsection (g)(1) while requiring only "substantial compliance" under subsection (g)(2) is incoherent. It makes no sense that parties could close a transaction if they substantially comply with their premerger notification obligations, yet remain strictly liable years after the fact for any trivial errors in those premerger filings—long after the government has signed off on the merger—and exposed, per the government's position here, to mounting daily penalties in the tens of thousands of dollars. And such an approach is inconsistent with the purpose and history of the Act: to prevent "midnight

mergers" by providing the antitrust agencies a "reasonable number of genuinely important documents" to investigate whether a transaction may impact competition, 43 Fed. Reg. at 33526, and to use "substantial compliance" as the yardstick to measure whether would-be merger partners have provided the government sufficient information to conduct that premerger review.

The government's Complaint contains at most a single allegation that KKR omitted information necessary to an antitrust review of just one of the challenged filings, and *not a single allegation* that any of KKR's HSR filings failed to "substantially comply" with the HSR Act's notification requirements. Indeed, the words "substantial compliance" do not appear in the Complaint. Likewise, the Complaint acknowledges only glancingly, in an introductory paragraph, that the government is limited by law to seeking such documents as are "necessary and appropriate" to its initial review—and then never references this limitation again in its ensuing 138 paragraphs. Compl ¶ 6.

The government seeks to plead its way around this problem by alleging generically— without reference to any specific document—that "[t]he omissions and alterations of these documents from KKR's HSR filings allowed it to consummate the acquisitions without the requisite antitrust scrutiny by the Antitrust Division," Compl. ¶ 31, and even "impeded the federal antitrust agencies' opportunities to evaluate the potential anticompetitive effects of KKR's transactions before they were completed," Compl. at 2. But that is not the standard. Even were such conclusory allegations sufficient for pleading purposes—and they are not, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007); *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (court is "not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations")—the mere fact that information might be *relevant*, or even *helpful* to the government's analysis does not render it "necessary." Nor does it mean that the failure to produce

such information as part of an initial HSR filing—and absent a Second Request—constitutes a failure to "substantially comply" with the HSR Act's notification requirements.[7] The fact that some relevant information is not produced with the initial notification is consistent with the non-exhaustive search the HSR Act contemplates, which is why the regulations explicitly acknowledge the "agencies *may not gain access to some relevant documents* at the time of their initial review." 43 Fed. Reg. at 33526 (emphasis added). Tellingly, the Complaint does not, because it cannot, allege that KKR's purported failures caused the government to *miss* an anticompetitive transaction, or even that the government would have *delayed* a transaction and issued a Second Request had the purportedly missing information been produced. In short, with or without the allegedly omitted information, the outcome of the government's investigation into the transactions is the same, underscoring that none of the materials the government alleges should have been produced was, in fact, "necessary" to its review.

The government's failure to plead the requisite elements for *any* purportedly missing or altered document—including that each such document was "necessary" to its antitrust review, and that the failure to produce that document constitutes a failure to "substantially comply" with the Act's notification requirements—renders the Complaint defective on its face. It should be dismissed for this reason alone.

---

[7] The Complaint does nod at the pleading requirements in connection with one transaction—Emsi—where it alleges certain omitted documents contained "essential information about competition between Emsi and a KKR portfolio company." Compl. ¶ 32. But there is no allegation that these omissions constituted a failure to substantially comply with the HSR Act's notification requirement, likely because the government received nearly identical information from other documents in KKR's filing.

## II.    The HSR Regulations Exceed The Government's Statutory Authority And Are Both Unconstitutionally Vague And Arbitrarily Applied

To the extent the government contends that it need not allege that the purportedly omitted documents were "necessary" to its premerger review, or that in omitting them, KKR failed to "substantially comply" with the HSR Act's premerger notification requirements, its position—and the implementing regulations on which it purports to rely—exceed its statutory authority.

Moreover, the government's own position about what is "necessary and appropriate" to its premerger review has been inconsistent, further muddying the meaning of those terms. Because the applicable regulations thus exceed the government's statutory authority, do not provide fair notice of what Item 4(c) requires, and, at least as applied here, enable arbitrary and standardless government enforcement, they violate due process. Any one of these issues would require the Complaint's dismissal. Here, all are present.

### A.    The Relevant Regulations Exceed The Government's Statutory Authority Both Facially And As Applied

Congress clearly defined the limits of the government's regulatory authority in the HSR Act: the FTC "(1) *shall* require that the notification required under subsection (a) be in such form and contain such documentary material and information relevant to a proposed acquisition as is *necessary and appropriate* to enable [it] to determine whether such acquisition may, if consummated, violate the antitrust laws"; and it "(2) *may* . . . prescribe such other rules as may be *necessary and appropriate* to carry out the purposes of this section." 15 U.S.C. § 18a(d) (emphasis added). By its plain terms, the HSR Act thus cabins what the government may demand of filers to that which is "necessary and appropriate" to evaluate a proposed acquisition for antitrust concerns. As the Supreme Court recently reminded agencies, enabling legislation is not an "open book to which the agency [may] add pages and change the plot line." *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (alteration in original).

The HSR notification process is broken into two distinct components: (1) an initial notification, and (2) a Second Request. As the statutory text makes clear, the purpose of the initial filing is "notification"—providing information sufficient to give notice and an opportunity for review—*not* to provide all potentially relevant information. The Act's legislative history, and scholarship devoted to its enforcement over decades, likewise reflect that the purpose of the initial filing is merely to provide information sufficient to enable the government to make a preliminary assessment and determine whether a Second Request is warranted.[8] Should the government decide to issue a Second Request, it is no longer limited to information that is "necessary and appropriate," but may at that point require "information or documentary material *relevant* to [the] proposed acquisition"—so long as that additional information is not "unreasonably cumulative, unduly burdensome, or duplicative." 15 U.S.C. §§ 18a(e)(1)(A), (b)(i)(I) (emphasis added).

The government exceeds its statutory authority to the extent that it requires HSR filers to include information in the initial notification that is not "necessary and appropriate" to determining whether a Second Request is warranted.[9] *Cf., e.g., Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 965 (5th Cir. 2023) ("[T]he adjectives necessary and appropriate limit the

---

[8]  *See* S. Rep. No. 94-803, at 66 (recognizing the need for a premerger review system that would "neither deter nor impede consummation of the vast majority of mergers and acquisitions"); Joe Sims & Deborah P. Herman, *The Effect of Twenty Years of Hart-Scott-Rodino on Merger Practice*, 65 Antitrust L.J. 865, 865-66 (1997) (noting Congress's objective in passing the HSR Act was to provide "advance notice to the agencies" along with the "production of a minimal amount of easily retrievable information").

[9]  While KKR brings both a facial challenge—asserting that the regulation exceeds the grant of authority from Congress to require only documents that are "necessary and appropriate"—and an as-applied challenge specific to KKR's circumstances, courts generally apply the same test to both. "[A]ll vagueness challenges—whether facial or as-applied—require us to answer two separate questions: whether the statute gives adequate notice, and whether it creates a threat of arbitrary enforcement." *United States v. Wasylyshyn*, 979 F.3d 165, 175 (2d Cir. 2020). The primary difference is that when deciding a facial challenge, the court looks to the text of the challenged regulation to determine whether it is vague, and in an as-applied challenge, the court looks to the facts of a particular case. *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006).

authorization contained in this provision."); *Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454, 465 (5th Cir. 2020) ("The grant of authority to promulgate 'necessary' regulations cannot expand the scope of the provisions the agency is tasked with 'carry[ing] out.'"). Indeed, the Complaint not only ignores these statutory limitations, but it alleges the *opposite*: that "[t]he HSR Act Rules require a merging party to submit true, complete, and correct copies of *all responsive documents* and then certify that it has done so." Compl. ¶ 20 (emphasis added). Over and over again, the Complaint alleges that KKR was required, as part of its initial HSR filings, to produce "*all required information*"—a phrase that appears some 16 times in the Complaint. *See* Compl. ¶¶ 68, 73, 78, 83, 88, 93, 98, 103, 108, 113, 118, 123, 128, 133, 138, 142 (emphasis added). Similarly, the Complaint asserts that KKR should be held liable for purportedly failing to "ensure *full compliance* with the HSR Act." Compl. ¶ 26 (emphasis added). Nowhere in the Complaint does the government acknowledge that KKR is obligated only to "substantially" comply with the HSR Act's premerger notification requirements, even though that limitation appears *three times* in the Act itself. *See* 15 U.S.C. §§ 18a(e)(1)(B)(i)(II), (g)(2), (g)(2)(B).

In support of its sweeping demands, the Complaint invokes the instructions to Item 4(c) of the HSR Notification and Report Form, which—in contrast to the HSR Act itself—requires parties to produce "*all* studies, surveys, analyses and reports which were prepared by or for any officer(s) or director(s) . . . for the purpose of evaluating or analyzing the acquisition with respect to market shares, competition, competitors, markets, potential for sales growth or expansion into product or geographic markets." HSR Form Instructions at VI (emphasis added).[10] But this provision of the

---

[10] The Complaint also cites Item 4(d), which likewise purports to require that parties produce "*all* Confidential Information Memoranda"; "*all* studies, surveys, analyses and reports prepared by [third party advisors such as investment bankers] . . . for the purpose of evaluating or analyzing market shares, competition, competitors, markets, potential for sales growth, or expansion into

HSR Form does not (and cannot) create a duty that exceeds the scope of the Act, for at least three reasons.

First, a requirement to produce *all* documents is facially inconsistent with a law that requires only *some* documents. The HSR Act could hardly be more explicit: it requires filers to produce only so much as is necessary to "substantially comply" with its notification requirements, which in turn, are limited to only such materials as are "necessary and appropriate" to the government's review.

There is an obvious reason that this burden was intended by Congress to be a relatively light one. It is intended *only* to give the government *notice* and *an opportunity for review*—nothing more. And that is why, when the HSR Act was first passed, the implementing regulations made clear that filers were required only to produce a "*reasonable number* of *genuinely important* documents*" to investigate whether a transaction may impact competition, and acknowledged that "agencies may not gain access to some relevant documents at the time of their initial review." 43 Fed. Reg. at 33526 (emphasis added). There is nothing reasonable about a requirement that filers produce "all documents" in a variety of categories, or that they produce information in those documents that has nothing to do with the government's antitrust review.

Second, the search for Item 4 documents was likewise always intended to be limited, quick, and, as noted by Rep. Rodino, focused on "the very data that is already available to the merging parties, and has already been assembled and analyzed by them." 122 Cong. Rec. 30,877 (1976). It was explicitly *not* intended to be an exhaustive, civil discovery-style forensic search. Clearly, such a limited search could not be expected—and has never been expected—to produce "all"

---

product or geographic markets"; and "*all* studies, surveys, analyses and reports evaluating or analyzing synergies and/or efficiencies." Compl. ¶ 7 (emphasis added).

documents. Indeed, even in civil discovery with forensic term searching, the producing party's obligation is not to produce "all" responsive documents, but rather to conduct a reasonable search, even when the document requests nominally demand "all" documents.[11]

Third, the vagueness of the rest of Item 4's language also precludes imposing an "all documents" requirement. Item 4(c) calls for "all" "studies, surveys, analyses or reports" that discuss certain competitive issues and were prepared by or for officers or directors "for the purpose of evaluating or analyzing the acquisition." But it does not call for "all documents," and amendments attempting to do so were specifically rejected.[12] Nor does it define "studies, surveys, analyses or reports," or explain exactly how to determine whether the documents were prepared "for the purpose of evaluating or analyzing the acquisition." Given these layers of ambiguity, it is hardly surprising that—until now—the government has never taken the position that any missed document, no matter how trivial or duplicative, constitutes a violation of the HSR Act that deserves tens of thousands of dollars of daily penalties accruing indefinitely.

A few examples highlight the extent to which the government's demands exceed its authority. As noted, the government's guidance provides that board *minutes* may be redacted for information that is irrelevant to Item 4(c) but that other documents—such as *presentations* to the board—may not be. By this logic, the minutes of a board meeting concerning portions of a presentation that do not relate to premerger antitrust review could properly be redacted, but redacting those same portions of the presentation itself would violate the HSR Act. This makes no sense. The production of information unrelated to premerger antitrust review cannot logically

---

[11] *See Solomon v. Fordham Univ.*, 2024 WL 3273112, at *10 (S.D.N.Y. July 2, 2024) ("Parties have a duty to conduct reasonable searches for documents responsive to discovery requests.").

[12] *See* 59 Fed. Reg. 30545, 30549 (June 14, 1994) (proposing a modification to the Item 4(c) language to require "all studies, surveys, analyses, or reports *or documents*"; this proposal was not adopted (emphasis added)).

be required by regulations issued pursuant to a statute that, on its face, requires only the production of information *necessary* to that review. And pursuant to that illogical requirement, the government seeks to hold KKR at fault for redacting a PowerPoint presentation about its proposed acquisition of Lynx, a fixed base operator, to exclude references to its *contemplated* potential acquisition of Ross, another fixed base operator—even though the Ross acquisition had not even been agreed to yet by the parties. Indeed, the government's own allegations make clear that the Ross acquisition was simply *an idea* at the time of the Lynx filing, and it did not come to fruition for nearly two months. *Compare* Compl. ¶ 74 ("On October 8, 2021, employees of the KKR Investment Managers submitted an HSR filing on behalf of KKR Apple Fund for its acquisition of Lynx, a fixed-base operator[.]"), *with* Compl. ¶ 79 ("On November 29, 2021, employees of the KKR Investment Managers submitted an HSR filing on behalf of KKR Global Infrastructure Fund for the proposed acquisition of Ross[.]").

The government does not allege that the HSR Act requires parties to submit information about hypothetical future transactions that are still being considered, but have *not been proposed*, much less negotiated. And, of course, such an allegation would be nonsensical. The government's allegations likewise make clear that the redacted information regarding Ross was immaterial to the government's analysis: as the government notes, by the time of the Ross filing, the Lynx acquisition had been permitted to close—and the government, fully aware of that fact, nevertheless permitted the Ross acquisition to close as well. *See* Compl. ¶¶ 74, 79.

Likewise, the government alleges with respect to the acquisitions of John Laing and Neighborly that KKR should be penalized for redacting information that included "analyses of valuation" and "investment returns." *See* Compl. ¶¶ 100, 105. But analyses of valuation and investment returns are *not* required by the HSR Act. They have no bearing on "whether such

acquisition may, if consummated, violate the antitrust laws." 15 U.S.C. § 18a(d)(1). Nor is such information required by Item 4(c) of the government's own Notification and Report Form—which purports to require information prepared "for the purpose of evaluating or analyzing the acquisition with respect to market shares, competition, competitors, markets, potential for sales growth or expansion into product or geographic markets," but says nothing about valuation or investment returns—or Item 4(d)—which purports to additionally require information "evaluating or analyzing synergies and/or efficiencies," but likewise says nothing about valuation or investment returns. HSR Form Instructions at VI-VII. The government nonetheless seeks to punish KKR for not including this irrelevant information in its filings.

The HSR rules also require filers to produce "multiple 'work in progress'" drafts of the same document if they were sent to more than one board member, regardless of whether the *same* information was included elsewhere in the HSR filing.[13] But submitting the same, redundant information cannot be "necessary and appropriate" for the purpose of an initial notification—particularly where, even in the context of Second Requests, the HSR Act *prohibits* demands for information that is "unreasonably cumulative, unduly burdensome, or duplicative." 15 U.S.C. § 18a(e)(1)(b)(i)(I). It makes no sense that the government would be permitted to demand duplicative documents in an initial filing, but *not* to request duplicative documents as part of the more thorough Second Request process. And, of course, that is not what the statute contemplates. Yet much of the material the government contends KKR improperly omitted from its HSR filings is, in fact, duplicative of material KKR produced.

---

[13] *See, e.g.*, FTC, HSR Informal Interpretation 1812001 (Dec. 12, 2018), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/1812001 (requiring submission of "multiple 'work in progress'" drafts of the same document).

Even when a statute delegates authority to an agency to promulgate rules and regulations, the court must still "independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 370 (2024). "The court fulfills that role by . . . 'fix[ing] the boundaries of [the] delegated authority.'" *Id.* (citation omitted). Here, the government has overstepped the bounds of the authority delegated to it under the HSR Act by demanding that filers submit more information than is "necessary" to enable it to analyze the anticompetitive effects of the proposed deal and determine whether to issue a Second Request or seek an injunction. The government's interpretation is untethered from the text of the statute, not contemplated by its drafters, and inconsistent with prior agency practice for the simple reason that it would significantly burden filing parties without achieving the Act's purpose of "effective preliminary antitrust review." 43 Fed. Reg. at 33526. This bureaucratic overreach is entitled to no deference.[14] *See Loper Bright*, 603 U.S. at 394 (agency interpretations are of little to no aid to courts interpreting statutes when agency positions have not "remained consistent over time"). Nor does it merit any. The Complaint should be dismissed for this reason as well.

### B.     The HSR Regulations Are Unconstitutionally Vague And Arbitrarily Applied

The government has sued KKR seeking onerous penalties for allegedly not complying with the law, "yet it will not tell [KKR] how to comply." *Coinbase, Inc. v. SEC*, 126 F.4th 175, 213,

---

[14]  The government's overreach also fails to account for the costs its newfound interpretation of Item 4 would impose on filers. *See Council of Parent Att'ys & Advocs., Inc. v. DeVos*, 365 F. Supp. 3d 28, 54 (D.D.C. 2019) (regulation was arbitrary and capricious because it did not account for the costs to those bearing the burden of the regulation). An "appropriate and necessary" regulation is one that considers "all the relevant factors," including any costs or disadvantages to complying with the regulation. *Michigan v. EPA*, 576 U.S. 743, 752-53 (2015). Onerous rules requiring a broad scope of redundant and irrelevant information do not provide benefits that outweigh the costs imposed on the filer. *Mexican Gulf*, 60 F.4th at 965-66 (striking down regulation promulgated as "necessary and appropriate for the conservation and management of the fishery" because the "asserted benefits from the GPS-tracking requirement do not bear any reasonable relationship to the undisputed costs" imposed on the parties being regulated).

(3d Cir. 2025) (Bibas, J., concurring).  That is not constitutional.  *See id*. at 214 ("[O]ne cannot deter or fairly blame the defendant who does not know what the law forbids.").  Item 4(c) is vague both facially and as applied to KKR, and the government's failure to provide notice of what it requires is unconstitutional.

It is a fundamental principle of due process that "laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  A law can be unconstitutionally vague "for either of two independent reasons."  *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  One is if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited."  *Fox*, 567 U.S. at 253.  The other is if it "is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Id*.  These notions of fairness "dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that [the government] may impose."  *BMW of N.A., Inc. v. Gore*, 517 U.S. 559, 574 (1996).  "This requirement of clarity in regulation is essential," *Fox*, 567 U.S. at 253, and "is implicated" whenever the government imposes "civil penalties," *Gore*, 517 U.S. at 574 n.22 (emphasis omitted).

Item 4(c) fails to provide fair notice for at least two independent reasons.  As the government concedes, it is confusing and leads to frequent mistakes.  It thus "fails to provide a person of ordinary intelligence fair notice of what is prohibited."  *Fox*, 567 U.S. at 253 (applying fair-notice requirements to an agency's civil enforcement action).  And, as this unprecedented lawsuit demonstrates, it lacks the "precision and guidance . . . necessary so that those enforcing the law do not act in an arbitrary or discriminatory way."  *Id.*  Either ground alone warrants dismissal of the Complaint.

First, as the government's own guidance notes, Item 4(c) is "confusing" because its "broad language is subject to a range of interpretations."  Item 4(c) Tip Sheet at 1.  The government receives, by its own count, "thousands of inquiries each year . . . concerning the . . . completion of the Form."[15]  And it acknowledges that filers "commonly" get its requirements wrong by producing documents "that are not in fact responsive to Item 4(c)" or by "occasionally . . . overlook[ing]" documents it considers responsive.  Item 4(c) Tip Sheet at 1.  When even the government admits that Item 4(c) has no clear meaning and routinely bewilders those trying to comply, the vagueness inquiry need go no further.  *See, e.g.*, *United States v. Davis*, 588 U.S. 445, 448 (2019) (statute was unconstitutionally vague where "[e]ven the government admit[ted]" that its language "provide[d] no reliable way to determine" what fell within its scope).

The government's refusal to clarify its requirements makes things worse.  Item 4(c) has three elements.  It requires filers to submit "[1] all studies, surveys, analyses and reports [2] which were prepared by or for officers or directors . . . [3] for the purpose of evaluating or analyzing [an] acquisition with respect to market shares, competition, competitors, markets, potential for sales growth or expansion into product or geographic markets."  HSR Form Instructions at VI.  But the government has declined to define any of those terms.

And even when the government *does* offer guidance about what it considers responsive to Item 4(c), that guidance is often even more confounding.  For instance, the government advises that filers need *not* produce "studies, surveys, analyses and reports" if they are found in documents such as text messages, chat messages, or .MOV files, but *must* produce such materials when they

---

[15]   FTC, *Hart-Scott-Rodino Premerger Notification Program Introductory Guide I* ("*HSR Introductory Guide*") 14 (Aug. 2024), https://www.ftc.gov/sites/default/files/attachments/premerger-introductory-guides/guide1.pdf.

are included in emails.[16]  On the other hand, the government advises that non-producible Item 4(c) materials included in ordinary course documents "can become" producible Item 4(c) materials in *certain* circumstances, such as when an ordinary course document within which such materials are contained is "incorporat[ed]" into "a new 4(c) document."[17]

Likewise, the government advises that Item 4(c) requires only the submission of final versions of documents, not drafts.  *See* Item 4(c) Tip Sheet at 4.  But a "draft" "ceases to be a draft" when it is submitted to a company's full board of directors, or the board of a subsidiary, or a committee or subcommittee of the board which is comprised of board members.  *Id.*  On the other hand, a "draft" sent to a single member of the board remains a "draft."[18]  And, the government speculates that a final version of a document submitted to an officer or director of a foreign subsidiary that is not involved in the deal "*probably*" does not need to be produced but does not provide a clear answer on that point.  *Id.* (emphasis added).  So, too, for redactions.  They are, as noted, sometimes permitted, and sometimes not.[19]  The text of the rule offers no support for these arbitrary distinctions.

---

[16]  FTC, HSR Informal Interpretation 2007004 (July 17, 2020), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/2007004 (stating chat conversations are not responsive to Item 4(c)); FTC, HSR Informal Interpretation 1810002 (Oct. 24, 2018), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/1810002 (stating texts are not responsive); FTC, HSR Informal Interpretation 1603004 (Mar. 23, 2016), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/1603004 (stating .MOV files not responsive); Item 4(c) Tip Sheet at 3 (noting emails are responsive).

[17]  FTC, HSR Informal Interpretation 1301011 (Jan. 14, 2013), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/1301011.

[18]  FTC, HSR Informal Interpretation 1205015 (May 22, 2012), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/1205015.

[19]  *Compare* FTC, HSR Informal Interpretation 1908006 (Aug. 19, 2019), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/1908006 (allowing unresponsive material to be redacted from board minutes), *with* FTC, HSR Informal Interpretation 1709011 (Sept. 22, 2017), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/1709011 (requiring submission of entire document where some portions are

HSR filers are thus left to rely on a web of haphazard guidance that is riddled with exceptions. That is not constitutionally permissible. *See Johnson v. United States*, 576 U.S. 591, 598 (2015) ("[T]he failure of persistent efforts to establish a standard can provide evidence of vagueness." (cleaned up)).

Second, this nebulous regulatory regime creates a situation ripe for arbitrary enforcement. With this lawsuit, for example, the government seeks onerous financial penalties on the basis of its claim that KKR violated the HSR Act by omitting or improperly redacting certain documents that Item 4(c) purportedly requires. But the government's conclusory allegations fail to establish even the basic elements of an Item 4(c) violation and seek to enforce an interpretation of Item 4(c) that is inconsistent with the government's own regulations. *See* Part I, *supra*. And those allegations underscore the ways in which the government's vague regulations are susceptible to arbitrary application, and thus violate due process.

As just one example of the government's overreach, the Complaint twice alleges that KKR failed to include information that would "help illuminate" the competitive impact of transactions, Compl. ¶¶ 7, 13—language that is completely untethered to the Act, Item 4(c), and even the government's prior enforcement actions. The HSR Act contains no "illumination" provision. Nor does the government bother to allege what exactly would have been illuminated, or what it would have done differently as a result.[20]

---

responsive and others aren't), *and* FTC, HSR Informal Interpretation 0802014 (Mar. 3, 2008), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/0802014 (explaining that "[o]nly Board minutes can be redacted without a claim of privilege" and that a presentation to the board cannot be redacted).

[20]  In some instances, the government does not even contend that the purportedly omitted information would have "illuminated" anything because it is obvious that it would *not* have. For example, the government alleges that KKR failed to include in its filing for the Emsi transaction "the complete version of one Item 4 document . . . that an employee altered prior to submission to

As another example, the Complaint alleges that penalties will continue to accrue so long as KKR does not make a "corrective filing." *See, e.g.*, Compl. ¶¶ 75, 80, 85, 90, 95, 100, 105, 110, 115, 125, 135, 139, 143. But the HSR Act itself does not even *mention* corrective filings—let alone suggest that parties are required to make corrective *pre*merger filings *after* a transaction has closed. This is an arbitrary requirement the government has invented out of whole cloth, and it is administratively burdensome and costly to businesses with no corollary benefit to substantive antitrust enforcement.

The government's extra-statutory requirements have turned the premerger notification system into a punitive game of "Simon Says." Its approach to enforcement demonstrates that Item 4(c) lacks the "precision and guidance . . . necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fox*, 567 U.S. at 253.

And based on these amorphous claims, the government contends that KKR may be liable for unprecedented penalties in excess of *$650 million*—penalties the government contends continue to mount even now, and even though the government has long since had in its possession the documents it alleges KKR failed to disclose. Indeed, by the government's logic, the HSR Act countenances the *endless post-merger* accrual of penalties for purportedly imperfect *premerger* filings. It proposes that such HSR penalties should continue to accrue even when those premerger filings substantially complied with the HSR Act, even *after* the government has received *all*

---

delete text referencing competitive issues." Compl. ¶ 70. But as the Complaint elsewhere notes, the employee was actually instructed simply to "revise" a *draft* version of the document that KKR was *not* required to file. *See* Compl. ¶ 34. And although the government alleges that the employee went on to delete the same entry from an earlier version of the document "that had already been presented to the Investment Committee," the Complaint makes clear that the entry merely identified generic considerations that "may arise" in *any* merger—*not* anything specific to the Emsi transaction. Compl. ¶ 34. Were this case to proceed to summary judgment, the evidence would show that the entry was in fact stock language from a third-party consultant's public website.

documents to which it claims to be entitled, and even when the government itself has concluded that the mergers themselves do not violate antitrust laws. No court has ever construed the statute so expansively, or to such outlandish effect. Nor has the government itself, before now. To the contrary, in the five instances where the government has even pursued alleged filing failures of the sort alleged here, the penalties ranged from $250,000 to $4 million. In this case, the government contends that it may be entitled to well *over 160 times* the largest penalty ever imposed—an extraordinary amount that, on its face, exceeds constitutional limits, and underscores the arbitrary nature of this action.[21]

### III. Counts 11 And 13 Should Be Dismissed Because There Is No HSR Violation

Section 18a(a) provides that "no person shall acquire . . . any voting securities or assets of any other person" unless they abide by the filing and other requirements set forth in the HSR Act. The government therefore can establish an HSR violation only when there has been an "acquisition." Mere attempts to acquire—and deals that are abandoned—are not "acquisitions" within the meaning of the Act. Because the TalentNeuron and Equus I transactions did not close, they were not "acquisitions" that implicate the Act. Counts 11 and 13—which relate exclusively to those transactions—should, accordingly, be dismissed.

When interpreting a statute, courts "begin with the text." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022). Section 18a(g)(1) allows the government to bring an action for civil penalties against persons who violate the Act. And the HSR Act contains one main prohibition: "[N]o person shall *acquire*, directly or indirectly, any voting securities or assets of any other person, unless both persons (or in the case of a tender offer, the acquiring person) file notification pursuant to rules under subsection (d)(1) and the waiting period described in subsection (b)(1) has

---

[21] *See* Final Judgment, *United States v. Hearst Tr.*, No. 01-2119 (D.D.C. Oct. 15, 2001), https://www.justice.gov/atr/case-document/final-judgment-104.

expired." 15 U.S.C. § 18a(a) (emphasis added). Because the HSR Act and its implementing regulations do not define "acquire" or "acquisition," *see id.* § 18a; 16 C.F.R. § 801.1 (definitional provisions), the Court should look to other sources to interpret the term's plain meaning. The leading legal dictionary defines "acquire" as to "gain possession or control of." *Black's Law Dictionary* (12th ed. 2024). So too for leading lay dictionaries. *Webster's Third New Int'l Dictionary* (1961) ("[T]o come into possession, control, or power of disposal of."); *Oxford English Dictionary* (2d ed. 1989) ("To gain, obtain, or get as one's own, to gain the ownership of.").

And that is how the term is used in caselaw interpreting the antitrust laws and elsewhere. Justice Brennan, for example, noted that the term "acquisition" as "used in § 7 of the [Clayton] Act means holding as well as obtaining assets." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 240 (1975); *see also Huddleston v. United States*, 415 U.S. 814, 820 (1974) (explaining that the term "clearly includes . . . possession, or control, or disposal power").

The term "acquisition" does not include attempts. Nor does the plain text of the Act impose liability on persons who file a deficient notification but do *not* follow through by obtaining possession or control of voting securities or assets.

This plain language reading is reinforced by the statutory context. Section 2 of the Sherman Act, for example, explicitly prohibits both violations and *attempted* violations of federal antitrust laws. *See, e.g.*, 15 U.S.C. § 2 ("Every person who shall monopolize, or *attempt* to monopolize . . . ."); *id.* § 3(b) ("Every person who shall monopolize, or *attempt* to monopolize . . . ."); *id.* § 7a-3(a)(2) (discussing "a violation or *attempted* violation of the antitrust laws") (emphasis added in all). The HSR Act, by contrast, does *not* contain the word "attempt." It refers to "proposed acquisition[s]" in Section 18a(f), but that subsection concerns the government's capacity to seek a preliminary injunction *blocking* an acquisition on the ground that it might violate substantive

antitrust law (15 U.S.C. § 18).  Courts "generally presume[] that Congress acts intentionally and purposely in the disparate inclusion or exclusion" of statutory terms in "the same Act," as is the case for 18a(f) and 18a(g).  *Bates v. United States*, 522 U.S. 23, 29-30 (1997).

Given Congress's repeated use of words like "attempted" and "proposed" in nearby sections of Title 15, the "absence of similar language" in Section 18a demonstrates that the Act does not penalize attempted transactions.  *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583-84 (2010); *see also Carr v. United States*, 560 U.S. 438, 449-50 (2010) (comparing similar statutes and characterizing the "absence of similar phrasing" as "powerful evidence" of statutory meaning); *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024) (collecting and applying cases in which the Court found "telling" Congress's use of statutory language in one provision of the securities laws but not another).

Notably, outside the context of this litigation, the government itself characterizes the HSR Act as applying only to completed transactions.[22]  In its *Hart-Scott-Rodino Introductory Guide*, for example, the FTC explains:  "*If you consummate* a reportable transaction without filing the required prior notification or without waiting until the expiration of the statutory waiting period, you may be subject to civil penalties."  *See HSR Introductory Guide I* at 12 (2024), https://www.ftc.gov/sites/default/files/attachments/premerger-introductory-guides/guide1.pdf (emphasis added)).  Likewise, the statute's implementing regulations explain, "[t]he completion or consummation or 'making' of an acquisition refers to the closing date, or the date on which title is transferred, rather than to the date on which a contract, agreement in principle or letter of intent

---

[22]  To be sure, the Supreme Court has clearly held that the government is owed no deference on the meaning of the HSR Act.  That is a question reserved for this Court.  *See Loper Bright*, 603 U.S. at 394 (cautioning that to the extent that agency positions now get any deference at all on matters of statutory interpretation, that would be the case only when the agency's position "ha[s] remained consistent over time").

is signed." 43 Fed. Reg. at 33453; *see also* 78 Fed. Reg. 68705, 68705 (Nov. 15, 2013) ("Section 7A of the Clayton Act requires the parties to certain mergers or acquisitions to file with the Agencies and to wait a specified period of time before consummating such transactions.").

In every enforcement action involving missed Item 4 documents KKR has identified—covering the last 35 years until the government's radical change in this case—the government has taken the position that a violation of the Act that results in penalties under (g)(1) occurs *when the acquisition occurs*—not when the supposedly deficient filing was made.[23]  Indeed, the government previously *dismissed* (g)(1) actions when the transaction at issue was abandoned.  *See, e.g.*, *FTC v. McCormick & Co.*, No. 88-cv-01128 (D.D.C. Apr. 26, 1988); *McCormick Bid Is Dropped*, Reuters, May 24, 1988, https://www.nytimes.com/1988/05/24/business/company-news-mccormick-bid-is-dropped.html (McCormick abandoned its plan to acquire Specialty Brands and no civil penalties were assessed for an allegedly deficient HSR filing).  It should therefore come as no surprise that an established treatise confirms that "*the Act applies to acquisitions—not to offers or agreements to acquire*."  Stephen M. Axinn et al., Acquisitions Under the Hart-Scott-Rodino Act § 4.01 (3rd ed. 2024) (emphasis added) (discussing the FTC's Statement of Basis and Purpose, 43 Fed. Reg. 33450).

The few courts that have engaged with the text of the Act have consistently read it to regulate completed transactions.  *See, e.g.*, *United States v. Farley*, 11 F.3d 1385, 1387 (7th Cir. 1993) ("The HSR Act prohibits anyone with substantial assets or sales from *acquiring* . . . .");

---

[23]  *See, e.g.*, Compl. ¶¶ 22, 24, *United States v. Iconix Brand Grp., Inc.*, No. 07-1852 (D.D.C. Oct. 15, 2007), https://www.justice.gov/atr/case-document/file/499196/dl; ); Compl. ¶¶ 19, 26, *United States v. The Hearst Trust*, No. 01-02119 (D.D.C. Oct. 11, 2001); Compl. ¶¶ 16, 39, *United States v. Blackstone Cap. Partners II Merchant Banking Fund L.P.*, No. 99-00795 (D.D.C. March 30, 1999), https://www.justice.gov/atr/case-document/file/489386/dl; Compl. ¶¶ 7, 31, *United States v. Automatic Data Processing, Inc.*, No. 96-606 (D.D.C. Mar. 27, 1996), https://www.ftc.gov/sites/default/files/documents/cases/1996/03/960327adpcmpt.pdf.

*United States v. Blavatnik*, 168 F. Supp. 3d 36, 40 (D.D.C. 2016) ("[T]he HSR Act requires [notification and observation] of a waiting period before a person *completes* certain acquisitions of voting securities or assets."); *Mattox v. FTC*, 752 F.2d 116, 119 (5th Cir. 1985) ("The statute was designed to allow review of mergers before they were *completed*."); *FTC v. Ill. Cereal Mills, Inc.*, 691 F. Supp. 1131, 1138-39 (N.D. Ill. 1988) ("The purpose of the HSR Act is to provide the Commission and the Department of Justice with information and time necessary to determine whether a proposed transaction, *if consummated*, may violate antitrust laws.") (emphasis added to all).

Finally, insofar as the Court finds the legislative history instructive, *see Quituizaca v. Garland*, 52 F.4th 103, 111-12 (2d Cir. 2022), it, too, supports KKR's reading of the Act. The House and Senate committee reports both indicate that the Act applies to completed, not attempted, transactions. *See, e.g.*, H.R. Rep. No. 94-1373, at 5 (July 28, 1976) ("Subsection (a) prohibits corporations from acquiring the voting securities or assets of other corporations, unless . . . ."); S. Rep. No. 94-803 (May 6, 1976), at 66 ("Section 7A(a) prohibits acquisitions until expiration of such period if the acquiring person or the acquired person, or both, are engaged in commerce or in any activity affecting commerce[.]"). This accords with a general concern about the difficulty with "unscrambling the eggs" and unwinding an unlawful transaction after it has already been completed. S. Rep. No. 94-803 at 61; *see* H.R. Rep. No. 94-1373 at 5.

The plain text, structure, and context of the Act confirm that a transaction that is abandoned does not give rise to civil penalties under Section 18a(g). The government does not explain its contrary reading. Nor does it make any sense to claim, as the government does, that KKR was in violation of the Act for 30 days after the allegedly incomplete HSR filings were made for Equus I

and TalentNeuron. *See* Compl. ¶¶ 120, 130. The government's attempt to impose penalties on transactions that did not close is plucked out of thin air and should be rejected.

Accordingly, the Court should dismiss Counts 11 and 13.

## CONCLUSION

For the above reasons, the Court should dismiss the Complaint in its entirety.

Respectfully submitted,

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**

DATED:  April 17, 2025

WORDS: 9,993 / 10,000

By:　　　/s/   William A. Burck

William A. Burck
Michael D. Bonanno (*pro hac vice forthcoming*)
1300 I Street, N.W., Suite 900
Washington, DC 20005
Tel: 202.538.8000
williamburck@quinnemanuel.com
mikebonanno@quinnemanuel.com

Andrew J. Rossman
Stephen E. Frank (*pro hac vice forthcoming*)
Mario O. Gazzola
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
295 Fifth Avenue
New York, NY 10016
Tel: 212.849.7000
andrewrossman@quinnemanuel.com
stephenfrank@quinnemanuel.com
mariogazzola@quinnemanuel.com

John Bash (*pro hac vice forthcoming*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
300 West 6th St., Suite 2010
Austin, TX 78701
Tel: 737.667.6100
johnbash@quinnemanuel.com

D. Bruce Hoffman (*pro hac vice forthcoming*)
Ryan Shores (*pro hac vice forthcoming*)
C. Lawrence Malm
**CLEARY GOTTLIEB STEEN &
　HAMILTON LLP**
2112 Pennsylvania Avenue, NW
Washington, D.C. 20037
Tel: 202.974.1500
bhoffman@cgsh.com
rshores@cgsh.com
lmalm@cgsh.com

Lina Bensman
**CLEARY GOTTLIEB STEEN &**
  **HAMILTON LLP**
One Liberty Plaza
New York, New York 10006
Tel: 212.225.2000
lbensman@cgsh.com

Charles F. Rule (*pro hac vice forthcoming*)
Deborah Garza (*pro hac vice forthcoming*)
Daniel J. Howley
**RULE GARZA HOWLEY LLP**
901 Seventh Street, NW
Suite 600
Washington, D.C. 20001
Tel: 202.843.9280
rule@rulegarza.com
garza@rulegarza.com
howley@rulegarza.com

*Counsel for Defendants*

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, William A. Burck,  an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that annexed Memorandum of Law was prepared using Microsoft Word and the document contains 9,993 words as calculated by the application's word-counting function, excluding the parts of the Affirmation exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 17th day of April, 2025 in New York, New York.

   /s/  William A. Burck
William A. Burck
