**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*<br><br>v.<br><br>KKR & CO. INC.,<br>KKR & CO. GP LLC,<br>KOHLBERG KRAVIS ROBERTS & CO. L.P.,<br>KKR AMERICAS FUND XII L.P.,<br>KKR AMERICAS FUND XII (KESTREL) L.P.,<br>KKR AMERICAS FUND XII (THRIVE) L.P.,<br>KKR APPLE AGGREGATOR L.P.,<br>KKR CHORD IP AGGREGATOR L.P.,<br>KKR CORE HOLDING COMPANY LLC,<br>KKR CORE II HOLDING COMPANY LLC,<br>KKR DCIF LOWER ENTITY III SCSP,<br>KKR GLOBAL IMPACT FUND SCSP,<br>KKR GLOBAL INFRASTRUCTURE<br>INVESTORS IV USD (APPLE) L.P.,<br>KKR NORTH AMERICA FUND XIII SCSP,<br>and<br>KKR OBSIDIAN AGGREGATOR LP,<br><br>*Defendants*. | Case No.: 1:25-cv-343<br>[rel. 1:25-cv-448]<br><br><br>ORAL ARGUMENT REQUESTED |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

   A. HSR Notification Requirements and HSR Form ................................................. 2

   B. HSR Compliance Provisions ................................................................................ 4

   C. Amount of Civil Penalties .................................................................................... 5

III. LEGAL STANDARD ...................................................................................................... 6

IV. ARGUMENT ................................................................................................................... 6

   A. KKR's Attempt to Impose Inapplicable Standards Fails as a Matter of Law. ..................... 7

      1. The Complaint Meets the Substantial Compliance Standard for Equitable Relief, and that Standard Is Not Applicable to Civil Penalties. ............................. 8

      2. The Plain Text of the HSR Act Imposes Civil Penalties for Any Failure to Comply with the Premerger Notification Provisions ............................................... 11

      3. The HSR Act Does Not Require the Government To Prove that Every Omitted or Altered Document in KKR's HSR Filings Was "Necessary" for Antitrust Review. .......... 16

   B. KKR's Egregious Omissions, Document Alterations, and Failures to File Are Inconsistent with the Plain Requirements of the HSR Form. .................................................... 18

   C. The HSR Rules Implementing the Notification Requirement Are Consistent with the Text and Purpose of the HSR Act. ............................................................................... 21

      1. The HSR Act Expressly Empowers the FTC and DOJ To Promulgate the HSR Rules. 22

      2. The HSR Rules Are Not Unconstitutionally Vague ........................................... 26

   D. KKR Incorrectly Contends There Are No Repercussions for Submitting Incomplete and Inaccurate HSR Act Filings ............................................................................... 28

V. CONCLUSION ................................................................................................................. 32

**Cases**

*Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 594 U.S. 758 (2021) ........................ 25

*Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988) ............................................................................ 8

*Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008) ..................................................................... 28

*Arriaga v. Mukasey*, 521 F.3d 219 (2d Cir. 2008) ................................................................... 26, 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................... 6

*Austin v. Town of Farmington*, 826 F.3d 622 (2d Cir. 2016) .................................................... 6, 10

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) ...................................................................... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 6

*Biden v. Nebraska*, 600 U.S. 477 (2023) ....................................................................................... 25

*Bondi v. VanDerStok*, 145 S. Ct. 857 (2025) ................................................................................. 24

*Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337 (1952) .................................................. 26

*Bristol-Myers Squibb Co. v. Matrix Lab'ys Ltd.*, 655 F. App'x 9, 11 (2d Cir. 2016) .................... 6

*Comack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194 (2d Cir. 2012) .......................... 26

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010) ................................................................ 26

*Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427 (2019) .................................................... 13

*FTC v. Consol. Foods Corp.*, 396 F. Supp. 1353 (S.D.N.Y. 1975) ................................................ 5

*FTC v. McCormick & Co.*, No. 88-cv-01128 (D.D.C. Apr. 26, 1988) ...................................... 9, 31

*Holder v. Humanitarian L. Project*, 561 U.S. 1 (2010) ................................................................ 27

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) ............................................................................... 6

*Jordan v. De George*, 341 U.S. 223 (1951) ................................................................................... 27

*Lau v. Bondi*, 130 F.4th 42 (2d Cir. 2025) ..................................................................................... 24

*Loper Bright Enters. v. Raimondo,* 603 U.S. 369 (2024)...................................................... 24, 25

*Mayfield v. U.S. Dep't of Labor*, 117 F.4th 611 (5th Cir. 2024).................................... 25

*McGirt v. Oklahoma*, 591 U.S. 894 (2020)................................................................... 30

*Michigan v. EPA*, 576 U.S. 743 (2015) ................................................................... 17, 23

*Newman v. Silver*, 713 F.2d 14 (2d Cir. 1983) ............................................................ 6

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) ....................................................... 13

*Pharm. Rsch. & Mfrs. of Am. v. FTC*, 790 F.3d 198 (D.C. Cir. 2015) ............................. 16, 17, 22

*Pickens v. Hamilton-Ryker IT Solutions, LLC*, 133 F.4th 575 (6th Cir. 2025)............................. 25

*Polselli v. Internal Revenue Serv.*, 598 U.S. 432 (2023)............................................. 12

*Pulsifer v. United States*, 601 U.S. 124 (2024) ........................................................ 29

*Russello v. United States*, 464 U.S. 16 (1983) ........................................................ 28

*Skinner v. Switzer*, 562 U.S. 521 (2011) ............................................................. 6, 8

*Stanton v. Elliott*, 25 F.4th 227 (4th Cir. 2022) ....................................................... 6

*Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*, 120 F.4th 494 (5th Cir. 2024)............ 25

*United States v. Blackstone Capital Partners,*

    1999 WL 34814751 (D.D.C. Mar. 30, 1999) .............................................. 12, 16

*United States v. Coppola*, 671 F.3d 220 (2d Cir. 2012) ............................................. 27

*United States v. Flakeboard Am. Ltd.*, No. 3:14-cv-4949 (N.D. Cal. Feb. 2, 2015) .................... 31

*United States v. Hearst Trust*, 2001 WL 1478814 (D.D.C. Oct. 15, 2001).............................. 12, 16

*United States v. Iconix Brand Group*, No. 1:07-CV-01852 (D.D.C. Oct. 15, 2007).............. 12, 16

*United States v. J. B. Williams Company, Inc.,* 498 F.2d 414 (2d Cir. 1974)................................ 5

*United States v. Kozeny*, 541 F.3d 166 (2d Cir. 2008) ................................................ 12

*United States v. Legends Hosp. Parent Holdings, LLC*,

No. 1:24-cv-5927 (S.D.N.Y. Dec. 9, 2024) ........................................................ 31

*United States v. Nadirashvili*, 655 F.3d 114 (2d Cir. 2011) ...................................... 27

*United States v. Reader's Digest Ass'n, Inc*., 494 F. Supp. 770 (D. Del. 1980) ............................ 5

*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989) ...................................... 12

*United States v. Salerno*, 481 U.S. 739 (1987) ...................................................... 26

*United States v. Sun & Sand Imports, Ltd.*, 725 F.2d 184 (2d Cir. 1984) ................................ 26

*United States v. Swingline*, 371 F. Supp. 37 (E.D.N.Y. 1974) ...................................... 5

*United States v. UnitedHealth Group, Inc.*,

No. 1:24-cv-3267-JKB (D. Md. Nov. 12, 2024) ................................................ 31

*United States v. Wasylyshyn*, 979 F.3d 165 (2d Cir. 2020) .......................................... 27

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) ...................... 26

*West Virginia v. EPA*, 597 U.S. 697 (2022) ...................................................... 25

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ................................................ 8

**Statutes and Bills**

15 U.S.C. § 18a .................................................................................. passim

H.R. 8532, 94th Cong., (May 25, 1976) .......................................................... 13

S. 1284, 94th Cong.,  21, 1975) .............................................................. 13, 29

**Rules and Regulations**

16 C.F.R. § 1.98 ................................................................................ 3, 5

43 Fed. Reg. 33450 (July 31, 1978) .............................................................. passim

78 Fed. Reg. 68705 (Nov. 15, 2013) .............................................................. 30

89 Fed. Reg. 89216 (Nov. 12, 2024)………………………………………………………3

**Other Authorities**

122 Cong. Rec. 16481 (1976) ............................................................................ 15, 33

122 Cong. Rec. 29341 (1976) ............................................................................ 15, 16

122 Cong. Rec. 30878 (1976) ................................................................. 6, 15, 16, 17

122 Cong. Rec. S29197 (daily ed. Sept. 8, 1976) .................................................... 10

Bruce Hoffman, "*All" means All: Submit side agreements with an HSR filing,*

https://www.ftc.gov/enforcement/competition-matters/2017/12/all-means-all-submit-side-

agreements-hsr-filing ........................................................................................ 17

FTC, Item 4(c) Tip Sheet (Nov. 28, 2016),

https://www.ftc.gov/system/files/attachments/hsr-resources/4ctipsheet.pdf. ...................... 23

FTC, HSR Informal Interpretation 2105006 (May 17, 2021) ...................................... 21

George S. Cary, *Speech at the ABA Annual Spring Meeting* (Mar. 28, 1996),

https://www.ftc.gov/news-events/news/speeches/failure-comply-hart-scott-rodino-act-

braveheart-or-dead-man-walking ........................................................... 16, 17, 18

H. Rep. No. 94-1373, at 2643 (1976) ................................................................. 15

*HSR Introductory Guide I* (2024), https://www.ftc.gov/sites/default/files/attachments/premerger-

introductory-guides/guide1.pdf ................................................................... 30

*Merger Oversight and H.R. 13131, Providing Pre-Merger Notification and Stay Requirements,*

*Before the Subcomm. on Monopolies and Comm. L.*, 94th Cong. 246 (1975) ...............29

# I.  INTRODUCTION

As alleged in the Complaint, KKR repeatedly and systematically flouted its legal obligations under the Hart-Scott-Rodino ("HSR") Act. Since Congress passed the law in 1976, the HSR Act has been the cornerstone of major merger investigations, which are conducted by either the United States Department of Justice's Antitrust Division or the Federal Trade Commission ("the antitrust agencies"). HSR Act requirements are well known to the corporate community, and particularly to sophisticated private equity firms like KKR.

Rather than abide by these well-understood obligations, KKR brazenly and repeatedly violated them. KKR downplays its misconduct as "ministerial mistakes" and "imperfect compliance" (Defs.' Motion to Dismiss, ECF No. 31 ("Mot.") at 1-2), but the facts alleged in the Complaint detail systematic and egregious misconduct. KKR failed to comply with its HSR Act obligations in a variety of ways on at least 16 separate transactions by: (1) omitting required documents, (2) submitting altered documents, and (3) on two occasions, failing to notify the antitrust agencies at all. Complaint ("Compl.") ¶¶ 66-143.

To deflect from the allegations, KKR tries to stand the statute on its head through contortions of language and meaning. KKR's tortured interpretation of the HSR Act is wrong as the plain language of the statute, its interpretation through regulation, and the legislative history make clear. The Court should reject KKR's attempt to evade consequences for its flagrant non-compliance by misinterpreting a 50-year-old statute to contrive meaning and heightened standards that have never been found there before.

The question before the Court at this stage is simple: has the Complaint alleged sufficient facts to permit the case to go forward to discovery? It has. Contrary to KKR's arguments, the United States (1) has properly pled claims that can enable it to obtain both equitable relief and monetary penalties, (2) is not required to show KKR failed to "substantially comply" with the

HSR Act to obtain monetary penalties, and (3) need not demonstrate "necessity" with respect to each document KKR omitted or altered. Nor does the HSR Act require the United States or the Court to determine *ex post facto* if KKR's non-compliant transactions were, in fact, anticompetitive. The direct harm alleged in the Complaint and inflicted by KKR was its failure to comply with the most basic mandates of the law and its evasion of the oversight mandated by Congress. Any additional harms to the market are the subject of other statutes (Section 7 of the Clayton Act and the Sherman Act) not at issue in this case. And the statutory maximum penalty available to the Court to impose is unprecedented because KKR's *conduct* is unprecedented.

The Complaint more than adequately alleges under all relevant standards that KKR has engaged in an egregious and continuous pattern of HSR Act violations. The Motion to Dismiss should be denied.

## II.    BACKGROUND

### A.    HSR Notification Requirements and HSR Form

For close to 50 years, the legal starting point to completing mergers and acquisitions valued over a certain amount has been to submit an HSR Act notification to the antitrust agencies and generally wait at least 30 days. Compl. ¶ 3.[1] The HSR Act requires the antitrust agencies to identify the types of "documentary material and information relevant to a proposed acquisition as is necessary and appropriate to enable the [FTC and DOJ] to determine whether such acquisition may, if consummated, violate the antitrust laws," and require them to be included in the notification. 15 U.S.C. § 18a(d)(1). The FTC, beginning in 1978, pursuant to this authority and with the Antitrust Division's concurrence, has promulgated and updated the "HSR Form" for

---

[1] Certain types of filings not relevant here have a shorter 15-day waiting period and different filing requirements. *See* 15 U.S.C. § 18a(b)(1).

parties to provide that notification.[2] Compl. ¶ 6. Detailed instructions on how to complete the form are provided in the appendices to 16 C.F.R. Part 803. *Id.* ¶ 7. The waiting period generally begins only after both parties have certified complete notifications, commonly known as "HSR filings," to the antitrust agencies. *Id.* ¶ 10.

A vital part of HSR filings are the parties' "Item 4" documents. Item 4 documents (named for the part of the HSR Form calling for them) are certain business documents prepared by or for officers and directors that help illuminate how the proposed transaction may affect competition, including

> **Item 4(c):** "all studies, surveys, analyses, and reports which were prepared . . . for the purpose of evaluating or analyzing the acquisition with respect to market shares, competition, competitors, markets, potential for sales growth or expansion into product or geographic markets"

> **Item 4(d):** "all Confidential Information Memoranda"; "all studies, surveys, analyses and reports prepared by [third party advisors such as investment bankers] . . . for the purpose of evaluating or analyzing market shares, competition, competitors, markets, potential for sales growth, or expansion into product or geographic markets"; and "all studies, surveys, analyses and reports evaluating or analyzing synergies and/or efficiencies."

Compl. ¶ 7.[3]

The Complaint alleges that KKR failed to comply with the HSR Act's notification requirements for at least 16 separate transactions over just two years. With respect to two of the 16 transactions at issue, KKR failed to submit a timely notification at all. *Id.* ¶ 13. With respect

---

[2] The HSR Form referred to in the Complaint and throughout this brief is the one in effect when KKR made the filings at issue in 2021 and 2022. A new HSR Form became effective on Feb. 10, 2025. 89 Fed. Reg. 89216 (Nov. 12, 2024).

[3] As discussed below, where a party is unable to include all the information and documents required by the HSR Form, it must provide "a statement of the reasons for such noncompliance." 15 U.S.C. § 18a(b)(1)(A)(ii). KKR did not provide such a statement for any of the transactions identified in the Complaint.

to the 14 transactions in which KKR did submit an HSR Form, the Complaint alleges that KKR failed to produce and/or altered "Item 4" documents. *Id*. Specifically, the Complaint alleges KKR frequently omitted documents that fell within the scope of Item 4 of the HSR Form. *Compare id.* ¶ 7 (describing the scope of Item 4), *with id.* ¶¶ 15-16, 70, 75, 80, 84, 110, 115, 120, 125, 129-30, 135 (describing the documents KKR omitted from its HSR filings). The Complaint also alleges KKR wholesale *deleted* (not merely visibly redacted) pages or portions of several of the Item 4 documents it did submit. *Id.* ¶¶ 70, 75, 80, 85, 90, 95, 100, 105.

### B.     HSR Compliance Provisions

The HSR Act contains two independent, but complementary, avenues for the United States to seek redress for non-compliance: civil penalties, 15 U.S.C. § 18a(g)(1), and equitable relief, 15 U.S.C. § 18a(g)(2). The United States seeks both. Compl. ¶ 144.

While Congress authorized the United States to pursue either or both remedies, it carefully crafted the two enforcement provisions to cover different (but overlapping) potential defendants, types of conduct, and HSR Act provisions, reflective of the different relief available under each subsection. Importantly, each of the subsections requires a different standard for relief: (1) for civil monetary penalties it is *any* "fail[ure] to comply"; (2) for equitable relief it is a failure "substantially to comply":

**(g) Civil penalty; compliance; power of court**

**(1)** Any person, or any officer, director, or partner thereof, who fails to comply with any provision of this section shall be liable to the United States for a civil penalty of not more than $10,000 for each day during which such person is in violation of this section. Such penalty may be recovered in a civil action brought by the United States.

**(2)** If any person, or any officer, director, partner, agent, or employee thereof, fails substantially to comply with the notification requirement under subsection (a) or any request for the submission of additional information or documentary material under subsection (e)(1) of this section within the waiting period specified in subsection (b)(1) and as may be extended under subsection (e)(2), the United States district court—
**(A)** may order compliance;
**(B)** shall extend the waiting period specified in subsection (b)(1) and as may have been extended under subsection (e)(2) until there has been substantial compliance … ; and
**(C)** may grant such other equitable relief as the court in its discretion determines necessary or appropriate . . .

15 U.S.C. § 18a(g) (highlighting distinctions).

## C.  Amount of Civil Penalties

The HSR Act provides for a maximum daily penalty available to the Court, which is adjusted by law each year pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 and is currently set at $53,088 per day. 16 C.F.R. § 1.98. Ultimately, the Court will decide the appropriate penalty in its discretion after considering a number of factors including: "(1) the good or bad faith of the defendant; (2) the injury to the public; (3) the defendant's ability to pay; (4) the desire to eliminate the benefits derived by a violation; and (5) the necessity of vindicating the authority of [the Department of Justice]." *United States v. Reader's Digest Ass'n, Inc*., 494 F. Supp. 770, 772 (D. Del. 1980) (citing, *inter alia*, *United States v. J. B. Williams Company, Inc.,* 498 F.2d 414, 438 (2d Cir. 1974); *FTC v. Consol. Foods Corp.*, 396 F. Supp. 1353, 1356-57 (S.D.N.Y. 1975); *United States v. Swingline*, 371 F. Supp. 37, 46 (E.D.N.Y. 1974)); *see also* 122 Cong. Rec. 30878 (1976) (statement of Cong. Rodino)

(recognizing that courts would apply "the traditional broad discretion held by the court in a civil penalty action" to strike a balance between promoting statutory compliance and avoiding overly harsh penalties).

## III. LEGAL STANDARD

To defeat a motion to dismiss, a complaint need only include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

Under Rule 8 of the Federal Rules of Civil Procedure, the United States need only "plead facts sufficient to show that [its] claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). The United States need not plead a particular "legal theory," *id.* at 11-12, or provide "an exposition of [its] legal argument," *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Consistent with this precedent, the Second Circuit requires only that plaintiffs plead the facts entitling them to relief, not the specific legal theory underlying their claims. *See Bristol-Myers Squibb Co. v. Matrix Lab'ys Ltd.*, 655 F. App'x 9, 11-12 (2d Cir. 2016) (plaintiff need not "identify the substantive legal basis for its claim"); *Newman v. Silver*, 713 F.2d 14, 15 n.1 (2d Cir. 1983); *see also Stanton v. Elliott*, 25 F.4th 227, 238 (4th Cir. 2022) (confirming that "[c]ourts should focus on the substance of the allegations" and that "[p]laintiffs need not put a claim under a special heading, quote the statute, or use magic words to make out a claim").

## IV. ARGUMENT

KKR's Motion to Dismiss misstates the relevant legal standards, disputes factual allegations that must be accepted as true, and argues that the longstanding statutory scheme

underpinning antitrust enforcement—mandated and authorized by Congress—is unconstitutional, based on the flimsiest of rationales. These arguments should be rejected.

### A. KKR's Attempt to Impose Inapplicable Standards Fails as a Matter of Law.

KKR argues the Court should dismiss the entire Complaint based on a misreading of the HSR Act: first, arguing that the Complaint must use magic words alleging a failure to "substantially comply" when describing KKR's pervasive document omissions, alterations, and wholesale failures to file, and second, that the Complaint must allege that each omitted or altered document, in isolation, was "necessary" for antitrust review. Mot. at 9-12. Neither is true.

As to the first argument, the Complaint's extensive factual allegations easily meet the "substantial compliance" standard for equitable relief. Compl. ¶ 144(c)-(e). And even if they did not, that failure would not result in dismissal of the Complaint, because the United States also seeks civil monetary penalties, *id.* ¶ 144(b), which have no such "substantial compliance" requirement. In the face of this obstacle, KKR tries to import the equitable relief standard to the civil monetary penalties provision to elevate Plaintiff's burden. Mot. at 9-12. KKR's argument is contrary to the plain text of the statute, basic tenets of statutory interpretation, and the relevant legislative history, and should be rejected.

As to the second argument, KKR misstates the HSR Act's requirement. The HSR Act directs the antitrust agencies to issue rules dictating which *types* of "documentary material and information" must be included in premerger notifications based upon their judgment of what is "necessary and appropriate" to enable effective antitrust review. 15 U.S.C. § 18a(d)(1). Nowhere does it require a document-by-document analysis of necessity. The Complaint therefore appropriately alleges that KKR failed to fully produce or altered certain categories of "documentary material" that are "necessary and appropriate."

For these reasons and those set forth below, the Motion should be denied.

1. *The Complaint Meets the Substantial Compliance Standard for Equitable Relief, and that Standard Is Not Applicable to Civil Penalties.*

KKR's motion seeks to dismiss all of the United States' claims because the Complaint does not use magic words: "substantially comply." Mot. at 9-12. No magic words are required. *See, e.g., Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (Rule 8 does not require plaintiff to plead "legal theor[ies]" or "specific . . . statutory and case law" (alteration in original)); *see also Skinner*, 562 U.S. at 530. The United States has pleaded extensive facts supporting each of the Complaint's sixteen counts detailing the nature and magnitude of KKR's omissions, alterations, and failures to timely file that amply support its request for equitable relief. *See Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc) ("Factual allegations alone are what matters."). The facts alleged demonstrate that KKR's noncompliance was substantial. And as explained below, the "substantial compliance" standard is not applicable to the civil monetary penalty provision of the HSR Act, which requires complete compliance. So even if the Complaint failed to meet the substantial compliance standard, the Motion should be denied.

As an initial matter, KKR failed to make a timely HSR filing *at all* for the Applovin and Adjust transactions underlying Counts 15 and 16 of the Complaint. KKR devotes merely a footnote to these transactions, asserting that one "could not even conceivably" have lessened competition and that KKR eventually made "corrective filings" for both transactions seven months after their consummation. Mot. at 9 n.6. Knowing it cannot defend these total failures to file, KKR falls back on two failing arguments. But the statute does not penalize failure to file for only anticompetitive transactions, but rather any reportable transaction. 15 U.S.C. § 18a(g). To require *ex post facto* analysis of the nature of the transactions would render the HSR Act's enforcement provisions toothless. And KKR's filings coming seven months after the transactions

closed provide no defense both for its failure to file the required notifications *and* to meet the requisite 30-day waiting period. Compl. ¶ 25.

As for the other 14 transactions, the Complaint pleads extensive facts plausibly alleging the substantiality of the omissions and alterations. *See FTC v. McCormick & Co.*, Civ. No. 88-1128, 1988 U.S. Dist. LEXIS 19385, at *3-4 (D.D.C. Apr. 26, 1988) (applicable "waiting period . . . will not begin, unless and until McCormick substantially complies with the [FTC]'s request for additional information by providing complete responses," which the court defined as "one that either (a) sets forth all the information and documentary material required to be submitted pursuant to the request, or (b) in the event a person is unable to provide a complete response, a detailed statement of reasons for non-compliance"); *see also* 122 Cong. Rec. S29197, 29341 (daily ed. Sept. 8, 1976) (statement of Sen. Hart) ("What constitutes 'substantial compliance' is to be determined by the court, and is to be measured in both qualitative and quantitative terms as well as whether the court finds that the compliance effort was reasonable and appropriate under the prevailing circumstances.").

Given the extreme behavior alleged—including *alteration* of Item 4 documents by KKR before submission—it is remarkable that KKR is arguing its noncompliance was merely "ministerial." Mot. at 1. For instance, before KKR acquired OutSystems, it submitted alterations of "two Item 4 documents included in *both* the original and corrective HSR filings," "delet[ing] six pages from one document, and seven pages from the other." Compl. ¶ 85 (emphasis added). The "deleted pages included information related to competitive positioning, customer surveys, and market landscape," critical evidence in evaluating the nature of the transaction. *Id.* Similarly, prior to acquiring ERM, KKR "deleted a total of 70 pages across four separate Item 4 documents prior to submitting these documents with this HSR filing, including one document with 40 out of

48 pages deleted and another document with 25 out of 42 pages deleted" where the "deleted pages included information related to analyses of competitors, market shares, barriers to entry, market projections, pricing, and post-merger plans." *Id.* ¶ 90. These allegations of fact describe serious misconduct, not mere "trivial errors." Mot. at 10.

The examples of omissions are equally substantial. For example, before KKR acquired Emsi, it submitted only two Item 4 documents. Compl. ¶ 69. In its corrective filing, it added 32 additional Item 4 documents, 28 of which predated the original HSR filing and contained critical "analyses of head-to-head competition . . . , product overlaps, customer interviews, post-merger strategic plans, pricing, and deal valuation." *Id.* ¶¶ 69-70. Similarly, KKR included only five Item 4 documents in its original Lynx filing, omitting 29 documents that "included information related to analyses of pricing, market shares by location, local and regional overlaps, and competitors." *Id.* ¶¶ 74-75.

KKR's factual disputes with the Complaint's characterization of the omitted and altered documents and their importance are not properly resolved on a motion to dismiss. *Austin*, 826 F.3d at 625 (all factual allegations must be accepted as true and all reasonable inferences drawn in the United States' favor). For instance, KKR attempts to deflect from its behavior by accusing the United States of deception when it is *KKR* that is engaged in gamesmanship. On the second page of its Motion, KKR argues that the United States "deceptive[ly] edit[ed]" an email in the Complaint. KKR's claim is entirely false. The text "IC memos" was *redacted by KKR* in the pre-filing investigation as purportedly privileged. The first time Plaintiff was aware of the previously withheld language was when KKR chose to disclose it in its Motion.

Additionally, KKR's characterization of this previously redacted email is not credible. In it, a junior KKR employee emailed a more senior executive regarding an HSR filing saying,

"I've always been told less is more 😊 ." Compl. ¶ 19. The senior executive responded by saying,

"I believe in less is more too . . . but all good here on the" (previously-redacted) "IC memos."

*Id.*; Mot. at 2. Contrary to KKR's interpretation, and as alleged in the Complaint, KKR did *not*

actually include all responsive IC (Investment Committee) memos in its initial HSR filing. *See*

Compl. ¶ 84. And the IC memos it did include were *altered*. *See id.* ¶¶ 19, 84-85. With this

context, it appears that "all good here on the IC memos" may have meant the senior employee

wanted the IC memos removed from the filing or was confirming they had been sufficiently

altered (they were "all good"). The dueling interpretations are exactly the kind of dispute best

resolved by the factfinder at trial, after discovery on a complete factual record, not on a motion

to dismiss.

2.  *The Plain Text of the HSR Act Imposes Civil Penalties for Any Failure to Comply with the Premerger Notification Provisions*

KKR's focus on "substantial compliance" completely ignores the fact that the Complaint

also seeks civil monetary penalties, for which a different, more permissive, standard applies. In

contrast to the HSR Act's equitable relief provision, the plain text of the civil monetary penalty

provision applies—without qualification—where "[a]ny person . . . fails to comply with *any*

provision of this section." 15 U.S.C. § 18a(g)(1) (emphasis added). One such mandatory

provision is the requirement to "file notification pursuant to rules under subsection (d)(1)."

§ 18a(a). For each of the HSR filings identified in the Complaint, KKR certified under penalty of

perjury that it had made such "notification" and complied with the rules promulgated by the

antitrust agencies pursuant to the HSR Act, namely to include the required "documentary

material and information." Compl. ¶¶ 10-11, 13. In fact, it did not. *See id.* ¶¶ 66-135 (specific

factual allegations regarding responsive documents omitted or altered).

KKR admits that failing to submit a notification with the required "documentary material and information"—here, Item 4 documents—can give rise to civil monetary penalties under subsection 18a(g)(1) of the HSR Act. Mot. at 10. Indeed, the United States has previously obtained civil penalties where HSR filers failed to include in their premerger notification all required documentary material. *See, e.g.*, *United States v. Iconix Brand Group*, No. 1:07-CV-01852, ECF No. 4 (D.D.C. Oct. 15, 2007); *United States v. Hearst Trust*, No. 1:01CV02119, 2001 WL 1478814 (D.D.C. Oct. 15, 2001); *United States v. Blackstone Capital Partners*, No. 1:99CV00795, 1999 WL 34814751 (D.D.C. Mar. 30, 1999). KKR also concedes that subsection 18a(g)(1) by its terms contains no language requiring substantial compliance with the HSR Act. *See* Mot. at 5. Rather, KKR seeks to import subsection 18a(g)(2)'s "substantially [] comply" standard for equitable relief into the distinct civil penalty provision.

Contrary to KKR's argument, Congress's choice of divergent language in adjacent provisions dictates different standards. "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002). This is especially true when—as here—"the provision in question is not just in the 'same Act'—it is *in the adjacent section*, having been enacted in the same Public Law." *Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 439 (2023) (emphasis added). There is nothing "incoherent," as KKR contends, about Congress imposing a different standard where the United States seeks civil penalties versus where it seeks to enjoin the closing of a transaction that may not otherwise raise substantive antitrust concerns. Where, as here, "the statute's language is plain, the sole function of the courts is to enforce it according to

its terms." *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)) (internal quotation marks omitted).

Unable to find support in the HSR Act's text, KKR resorts to contorting quotes from the legislative history. But "the text of a law controls over purported legislative intentions unmoored from any statutory text." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). And legislative history cannot "be used to 'muddy' the meaning of 'clear statutory language.'" *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) (citation omitted). The text squarely resolves this matter. Yet if the Court turns to legislative history, the history only supports the United States' interpretation that Congress intended to adopt distinct standards for monetary penalties and equitable relief.

The drafting history of the HSR Act demonstrates that Congress imposed a substantial compliance standard only when expanding the bill to allow for equitable relief. An early draft of the Act authorized exclusively penalties for failures to abide by the waiting period or complete the notice. S. 1284, 94th Cong., Title V, § 23(f) (Mar. 21, 1975). Nothing in the text of that earlier draft or the accompanying legislative history references a substantial compliance standard. 122 Cong. Rec. 16481 (1976); *see* H.R. 8532, 94th Cong., Title V, § 7A(f) (May 25, 1976); *see also* 122 Cong. Rec. 30878 (1976). A later amendment combined the penalty provisions, while adding a separate provision authorizing equitable relief where a party "failed substantially to comply." H. Rep. No. 94-1373, at 2643 (1976) (describing House bill). With this amendment, as with the prior version, Congress made clear that the civil penalty provision would be triggered whenever "there has [not] been *absolute and complete compliance* with the notification requirements." 122 Cong. Rec. 29341-42 (1976) (statement of Sen. Hart) (emphasis

added). Congress likewise intended "complete compliance, not substantial compliance" with the HSR Act's timing provision, which is similarly enforced through civil penalties. *See id.* at 30878.

Describing these complementary provisions, sponsoring Senator Hart distinguished between the "comply fully" standard applicable for civil penalties and the "substantial compliance" standard for equitable relief under (g)(2). "If for whatever reason, a person does *not comply fully*" with the notification requirements, Senator Hart observed, "the statute requires that he submit an explanation for this noncompliance," which "is *clearly not* a substitute for compliance with the notification obligation" but "*will be useful in any civil penalty* proceeding that may be brought under subsection (g)(1)." 122 Cong. Rec. 29341-42 (1976) (emphasis added). By contrast, "[t]he standard under which a request for an extension of the [waiting] period under subsection (g)(2) will be measured, *however*, is substantial compliance." *Id.* at 29342 (emphasis added).

Sponsoring Congressman Rodino espoused the same interpretation of the Act. While KKR selectively quotes Congressman Rodino's statement discounting "absolute and complete compliance," Congressman Rodino was not referring to the HSR Act's penalty provision at all. Rather, he was explaining that the 30-day waiting period under subsection 18a(b)(1) can begin to run not only upon submission of a "completed notification," but also upon submission of "a partially completed notification, *together with a specific statement of the reasons for the partial non-compliance.*" *Id.* at 30876 (emphasis added). When Congressman Rodino turned to the penalty provision just two pages later in the Congressional Record, he made clear that subsection 18a(g)(1) imposes a "complete compliance" standard and applies to failures to satisfy the notification requirement fully. *See id.* at 30878.

Nor did Congress, as KKR contends, intend subsection 18a(g)(2) to "necessarily cabin[]" subsection 18a(g)(1). Mot. at 10. While "a court injunction pursuant to subsection (g)(2) would ordinarily be the proper remedy" when the United States knows "the merging companies fail to comply substantially with the notification data or additional information requirements," Congress recognized the civil penalties available under subsection (g)(1) may provide an alternative recourse when the parties' failure to comply with the statute leaves the United States with "no realistic opportunity to seek injunctive relief." 122 Cong. Rec. 30878 (statement of Cong. Rodino). "If [the parties] do so," Congressman Rodino warned, "they act at their peril, and would properly be subject to sanctions under subsection (g)(1), which, on its face, applies to violations of 'any' provision of this act." *Id.*[4]

The legislative history also refutes KKR's assertion that enforcing (g)(1)'s full compliance standard would result in penalties larger than Congress intended. In enacting the HSR Act, Congress considered and rejected KKR's concern over "mounting daily penalties in the tens of thousands of dollars." Mot. at 10; *see* 122 Cong. Rec. 30878 (statement of Cong. Rodino); *id.* at 17569 (statement of Sen. Allen). And, as noted above, the HSR Act merely sets a

---

[4] The understanding that the HSR Act commands full compliance is hardly novel. In December 2017, KKR's own counsel published an FTC blog post while Director of the FTC's Bureau of Competition explaining that the HSR Rules calling for the submission of "all" documents in a certain category unsurprisingly require the submission of "all" such documents. Bruce Hoffman, *"All" means All: Submit side agreements with an HSR filing*, https://www.ftc.gov/enforcement/competition-matters/2017/12/all-means-all-submit-side-agreements-hsr-filing. *See also* George S. Cary, *Speech at the ABA Annual Spring Meeting* (Mar. 28, 1996), https://www.ftc.gov/news-events/news/speeches/failure-comply-hart-scott-rodino-act-braveheart-or-dead-man-walking ("It is critical to effective merger enforcement that merging entities comply fully with the HSR Act. Full compliance means not only that a filing is made in a timely manner but that the parties to a transaction turn over all of the information that is required under the Act.").

*maximum* daily penalty, which ultimately a court has discretion to calculate based on the facts and circumstances of the particular violation proven.

KKR also argues that the Complaint is somehow infirm because it does not also seek relief under Section 7 of the Clayton Act to unwind the underlying transactions at issue. Mot. at 1. To be clear, the evidence will show that some of the documents altered or withheld by KKR related to the core issues of antitrust review: competitive concerns. But, regardless, the penalty provision of the HSR Act does not require any showing that the underlying transaction was anticompetitive. Nor have prior enforcement actions under the HSR Act. *See, e.g.*, *United States v. Iconix Brand Group*, No. 1:07-CV-01852 (D.D.C. Oct. 15, 2007); *United States v. Hearst Trust*, No. 1:01CV02119 (D.D.C. Oct. 15, 2001); *United States v. Blackstone Capital Partners*, No. 1:99CV00795 (D.D.C. Mar. 30, 1999); *see also* Cary, *supra* n.4 ("We have emphasized in the past that we do not see the absence of an antitrust violation as a mitigating factor."); *see also id.* ("Even if the HSR filings that we receive provide sufficient information to warrant a second request, nonetheless, failure to provide 4(c) documents may cause substantial prejudice to the Commission's enforcement efforts.").

3.      *The HSR Act Does Not Require the Government To Prove that Every Omitted or Altered Document in KKR's HSR Filings Was "Necessary" for Antitrust Review.*

KKR next patches together snippets of statutory language and agency rule-making commentary to concoct a requirement that the Government must allege and ultimately prove, *ex post facto*, that "each such [omitted or altered] document was 'necessary' to its antitrust review." Mot. at 12. No such standard appears in the text of the HSR Act's penalty provision nor applies for any other reason.

To support its argument, KKR first plucks the word "necessary" in subsection 18a(d)(1) out of context. But the phrase "necessary and appropriate" in subsection 18a(d)(1), as elsewhere, grants the antitrust agencies "*great discretion* to define statutory terms and to promulgate rules to facilitate Government identification of mergers and acquisitions likely to violate federal antitrust laws before the mergers and acquisitions are consummated." *Pharm. Rsch. & Mfrs. of Am. v. FTC*, 790 F.3d 198, 205 (D.C. Cir. 2015) (emphasis added); *see also Michigan v. EPA*, 576 U.S. 743, 752 (2015) (describing a provision authorizing the promulgation of "appropriate and necessary" regulations as "capacious[]" and "leav[ing] agencies with flexibility"). The antitrust agencies exercised this broad rulemaking authority in 1978, deciding that the category of documents at issue in this case—Item 4 documents—were the type of documentary material "necessary and appropriate" to require as part of the premerger notification.[5] In seizing on the words "necessary and appropriate," KKR wrongly tries to invert Congress's grant of broad rulemaking authority into an individualized threshold for each document.

KKR's Motion appears to contend that subsection 18a(d)(1) effectively allows a premerger notification filer to unilaterally disregard the rules authorized by that provision and determine for itself (and post-hoc argue to a Court) that a particular document was not sufficiently "necessary and appropriate" for antitrust agency review. KKR can point to no precedent for such a position, which would undermine the rulemaking framework created by the HSR Act and threaten to upend the HSR review process by permitting merging parties that have

---

[5] KKR's brief reference to subsection 18a(d)(2) (Mot. at 13) is even further afield. That provision permits the antitrust agencies to issue "such other rules as may be necessary and appropriate to carry out the purposes of this section." It certainly does not establish a standard for the Court to assess whether KKR complied with the HSR Act.

strong economic interests to provide a limited notification, or unilaterally omit and alter documents that fall within the required categories.

To buttress its argument, KKR rummages through the administrative record and repeatedly cites language in the notice of proposed rulemaking that first specified the premerger notification requirements in 1978. *See* Mot. at 6, 11 (citing 43 Fed. Reg. 33450, 33526 (July 31, 1978)). There, the FTC explained that in crafting the scope of the Item 4 requirement, which required the submission of "all" documents falling in certain specified categories, it had *already limited* the request to a "reasonable number of genuinely important documents" from a limited set of executives necessary for an initial review. 43 Fed. Reg. at 33526. But the FTC's recognition that it had already narrowed the scope of Item 4—reducing the burden on filers like KKR—does not somehow provide KKR with the right to unilaterally narrow the "documentary material" included in its premerger notification even further. The Court should reject KKR's sleight-of-hand two-step analysis seeking to limit its HSR Act submissions to the particular documents KKR believed were "genuinely important" (a standard found nowhere in law or regulation). Instead, the Court should apply the plain language requirements set forth in the rules promulgated pursuant to subsection 18a(d)(1) of the HSR Act.

**B.      KKR's Egregious Omissions, Document Alterations, and Failures to File Are Inconsistent with the Plain Requirements of the HSR Form.**

KKR's contentions that it lacked notice of its obligations under Item 4 or that the HSR Rules have been applied arbitrarily (Mot. at 13) should be rejected. The Complaint's well-pled allegations establish KKR failed to comply fully with Item 4 of the HSR Form. *See infra* at 3-4. None of the "informal interpretations" of the HSR Rules identified by KKR justify KKR's failure to comply. Mot. at 17-18. Notably, KKR does not cite any of the FTC's *formal* interpretations of the HSR Act, which are voted upon by the Commission and represent final agency action,

https://www.ftc.gov/legal-library/browse/hsr-formal-interpretations. And the Court should decline KKR's attempt to raise factual disputes tied to its views of the nature and character of the omitted and altered Item 4 documents at this stage.

KKR's motion does not identify any particular language in the HSR Rules that it claims to be vague. Instead, KKR points to various informal interpretations by FTC staff to sweepingly argue that the scope of Item 4 of the HSR Form was so vague that any enforcement action is arbitrary and standardless such that it violates due process. Mot. at 13, 21-24. Tellingly, KKR does not claim it even relied upon any informal interpretation it cites—because it cannot—to justify the omissions, alterations, and failures to file here. Indeed, many of the informal interpretations cited appear to have no connection at all to KKR's omissions and alterations. And while KKR contends the informal interpretations treat different documents differently, it does not appear to contend any interpretations—especially any relevant to the conduct alleged here—have been inconsistent with respect to the same types of documents.

First, KKR points to informal interpretations allowing for limited redactions of Board minutes submitted pursuant to Item 4. Mot. at 23 & n.19. KKR mischaracterizes the informal interpretations as "permit[ting] parties to redact board meeting minutes to include only Item 4-relevant content." Mot. at 7. But the cited informal interpretations only permit redactions of portions of formal board minutes that are entirely "unrelated to the proposed transaction." FTC, HSR Informal Interpretation 2105006 (May 17, 2021), https://www.ftc.gov/legal-library/browse/hsr-informal-interpretations/2105006. And none of the informal interpretations permit parties to *delete,* without any kind of marker, whole portions of otherwise responsive Item 4 documents, as opposed to merely redacting them, an important distinction well-recognized in litigation discovery. Moreover, the informal interpretations cited explicitly limit permissible

redactions to Board minutes and no other types of documents, as KKR itself concedes. Mot. at 8. Here, none of the allegedly altered documents were Board minutes. KKR engages in impermissible factual disputes over whether the particular portions of the Item 4 documents altered by KKR employees were independently responsive to Item 4, Mot. at 18-19, but it does not—and cannot—contend that the altered Item 4 documents were outside the scope of its disclosure requirements. Indeed, they were submitted by KKR to the antitrust agencies as Item 4 documents. *See id.* And, in any event, the alterations should not be considered in isolation. While the altered documents constituted independent failures to comply, they occurred alongside omissions of entire Item 4 documents and failures to file entire transactions, demonstrating KKR's general approach to compliance with its HSR Act obligations: non-compliance.

Second, KKR cites inapposite informal interpretations that alleviate the burden on HSR filers to collect and produce certain types of electronically stored information, such as text messages, chat messages, and .MOV files. Mot. at 22-23 & n.16. None of the documents the United States alleges KKR omitted from its HSR filings fall into these categories. And KKR's motion acknowledges that the FTC has never said that corporate presentations, emails, and the other types of documents at issue in the Complaint could be omitted from an HSR filing. *Id.* n.16 (citing Item 4(c) Tip Sheet at 3 (noting emails are responsive)). KKR inappropriately seeks to exploit the FTC staff's informal decision reducing the burden on HSR filers for documents not relevant to this case to suggest it has rendered the entire requirement vague.

Third, KKR points to FTC staff informal guidance on drafts as purportedly confusing and arbitrary. Mot. at 23. But the standard articulated in that guidance simply clarifies that not every draft of a single document must be submitted in response to Item 4, while simultaneously

preventing filers from using semantics about "drafts" to withhold documents clearly called for by Item 4:

> It has been the PNO's informal position for many years that if there is no final version of a document responsive to Item 4(c), the latest draft should be submitted. If there is a final version, no drafts need to be additionally supplied unless the draft went to the Board. When a copy of a draft document is sent to the Board, it ceases to be a draft and must be submitted if it meets the other Item 4(c) criteria, even if a final version is also being submitted.

FTC, Item 4(c) Tip Sheet at 4b (Nov. 28, 2016),

https://www.ftc.gov/system/files/attachments/hsr-resources/4ctipsheet.pdf.[6] This guidance mitigates the risk that filers will circumvent the HSR Rules by strategically labeling documents that in fact inform company decision-making as "drafts." Importantly, here, the Complaint does not allege any of the omitted documents were "drafts" of documents KKR actually submitted. To the extent KKR disagrees with that characterization or wishes to raise a defense based on such a factual dispute, it can do so at trial.

**C.** **The HSR Rules Implementing the Notification Requirement Are Consistent with the Text and Purpose of the HSR Act.**

KKR boldly seeks to abolish the premerger review notification process in existence since 1978 as unlawful and unconstitutionally vague. Mot. at 13. The Court should reject KKR's challenge to these long-standing regulations, which fall well within the scope of authority delegated to the antitrust agencies to define the contours of premerger notification based upon the agencies' experience and expertise.

---

[6] The Item 4 Tip Sheet includes the following bolded warning for filers on the first page: "The documents discussed below should not be considered an exhaustive list of materials potentially responsive to Item 4(c)."

1. *The HSR Act Expressly Empowers the FTC and DOJ To Promulgate the HSR Rules.*

As discussed above, subsection 18a(d)(1) expressly authorizes the antitrust agencies to dictate both the information required to be included on the premerger notification as well as the documentary material that must accompany the form. The statute also affords the antitrust agencies considerable discretion in fleshing out the details of the HSR statutory scheme, authorizing the antitrust agencies to "(A) define the terms used in this section" and "(C) prescribe such other rules as may be necessary and appropriate to carry out the purposes of this section." 15 U.S.C. § 18a(d)(2); *see also Pharm. Rsch. and Mfrs. of Am. v. FTC*, 790 F.3d 198, 201 (D.C. Cir. 2015) (finding promulgated HSR rule consistent with HSR Act's purpose, which is to assist the agencies in enforcing the Clayton Act "and to give the FTC and the Department of Justice a tool to identify problematic mergers and acquisitions before they were consummated").

Consistent with this statutory authority, in 1978, after notice and comment rulemaking, the FTC and DOJ identified a limited set of documents necessary and appropriate to require filers to include in their premerger notifications, such that the antitrust agencies can meaningfully evaluate potential anticompetitive effects of a transaction and decide whether to expend limited resources to open an investigation. *See* 43 Fed. Reg. at 33525-26. Relevant here, the antitrust agencies required filers to submit business documents in response to Item 4 of the HSR Form that are limited by i) subject matter ("all studies, surveys, analyses and reports which were prepared . . . for the purpose of evaluating or analyzing the acquisition with respect to market shares, competition, competitors, markets, potential for sales growth or expansion into product or geographic markets" or synergies) and ii) custodians/audience (documents prepared by or for officers and directors). Describing their rationale, the agencies explained that "past experience"

had shown that internal documents "are extremely valuable in analyzing the antitrust implications of an acquisition" and "provide a perspective on matters of antitrust concern that even detailed statistical information is unlikely to yield." 43 Fed. Reg. at 33525. "[S]ome of these perceptions" aired in these documents, the FTC and DOJ concluded, "are indispensable to the preliminary review envisioned by the act." *Id.*

In setting forth the scope of Item 4 documents, the antitrust agencies rejected, after careful consideration, much broader sets of documents relevant to antitrust review. For example, the proposed rule originally required such documents "prepared by or for the company" writ large. 43 Fed. Reg. at 33526. Ultimately, the antitrust agencies determined based on public comment and analysis that the narrower scope of what became Item 4 "is easily administrable and should yield a reasonable number of genuinely important documents." *Id.* While KKR contends any requirement to produce "all" documents is somehow inconsistent with the HSR Act, Mot. at 15-16, it fails to grapple with the fact that Item 4 is limited to "all" documents that fall within a *limited category* of business records prepared by or for a limited set of individuals that the antitrust agencies determined to be both necessary and appropriate to include in the premerger notification.

The narrow categories of documents called for by Item 4 are "necessary and appropriate" and "relevant to a proposed acquisition." 15 U.S.C. §§ 18a(d)(1). "One does not need to open up a dictionary in order to realize the capaciousness of this phrase." *Michigan v. EPA*, 576 U.S. 743, 752 (2015) (discussing "appropriate and necessary"). In identifying these categories of required documents, the FTC clearly and carefully accounted for the costs imposed on filers. *See, e.g.*, 43 Fed. Reg. at 33520 ("[T]o require a shorter initial notification would more frequently lead to the issuance of a request for additional information, with its consequent delay and burden on the

reporting person or persons."); *id.* at 33,524 ("Since the[] documents [requested by Item 4(a)] will be readily at hand, requiring their submission imposes no undue burden on [the] reporting person."); *id.* at 33,526 (adopting "substantially streamlined revised version" of Item 4(c) in response to comments objecting that the original "item was burdensome"). For these reasons, the Court should reject KKR's contention that the HSR Rules improperly are unduly burdensome and "fail[] to account for the costs" imposed on filers. Mot. at 20 n.14.

KKR similarly finds no support for its position in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). Although *Loper Bright* concluded that courts must "police the *outer* statutory boundaries of" statutory delegations, "courts must respect" Congress's decision to "delegate[] authority to an agency." *Id.* at 413. *Loper Bright* confirmed that, while courts must use independent judgment in interpreting statutes, sometimes the best reading of a statute is that "the agency is authorized to exercise a degree of discretion." 603 U.S. at 394; *see id.* at 404, 413. Such deference was especially proper, the Supreme Court held, where statutes "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme or to regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,' such as 'appropriate' or 'reasonable.'" *Id.* at 395 (citations and footnote omitted). That is precisely the situation here.

*Loper Bright* made clear that courts' exercise of "independent judgment" in statutory-interpretation cases "is consistent with the 'respect' historically given to Executive Branch interpretations." 603 U.S. at 399 (citation omitted); *see id.* at 403, 412-13. The Court emphasized that judges have found "[s]uch respect . . . especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.* at 386; *see Bondi v. VanDerStok*, 145 S. Ct. 857, 874 (2025) ("[T]he contemporary and consistent views of a coordinate branch of government can provide evidence

of the law's meaning."); *Lau v. Bondi*, 130 F.4th 42, 46 (2d Cir. 2025) (Under *Loper Bright*, "courts may give '[c]areful attention to the judgment of the Executive Branch' when interpreting a statute," though "such careful attention must not prohibit courts from exercising 'their independent judgment'" (quoting 603 U.S. at 412-13)).

The HSR Rules that KKR challenges here have remained largely the same since their adoption in 1978. *See* 43 Fed. Reg. at 33555 (Pt. 803 Appendix). Because these requirements are longstanding and roughly contemporaneous with the HSR Act's enactment, *Loper Bright* supports according them, at a minimum, "respect." Other courts have continued to recognize that "'broad and open-ended' grants of authority under the heading of terms like 'reasonable,' 'appropriate,' 'feasible,' [and] 'practicable' . . . unambiguously convey discretion." *Pickens v. Hamilton-Ryker IT Solutions, LLC*, 133 F.4th 575, 587 (6th Cir. 2025); *see also Mayfield v. U.S. Dep't of Labor*, 117 F.4th 611, 614, 618 (5th Cir. 2024); *Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*, 120 F.4th 494, 504 (5th Cir. 2024) (in addressing a statutory provision that directed an agency to "establish" a "methodology" for "determin[ing] [a] qualifying payment amount," describing the provision as "a fairly broad delegation of authority").

KKR fares no better in invoking the "major questions doctrine" from *West Virginia v. EPA*, 597 U.S. 697 (2022). That case addressed "the major questions doctrine"—the principle that, in "extraordinary" cases involving "transformative" and "unheralded" assertions of authority, agencies "must point to 'clear congressional authorization'" for their actions, *id.* at 723-24 (citation omitted). A longstanding rule specifying the types of information to request in premerger notification forms hardly reflects the "transformative" or "unheralded" authority that has triggered the major-questions doctrine. *E.g.*, *Biden v. Nebraska*, 600 U.S. 477, 494 (2023) (agency claimed "authority to cancel $430 billion of student loan principal"); *West Virginia*, 597

U.S. at 727-28 (agency claimed authority to "forc[e] a shift throughout the power grid from one type of energy source to another"); *Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 594 U.S. 758, 759 (2021) (per curiam) (agency claimed authority to "impose[] a nationwide moratorium on evictions of any tenants" who met certain conditions). And, in any event, the HSR Act provides "clear congressional authorization," *West Virginia*, 597 U.S. at 723 (citation omitted), for the antitrust agencies to determine the types of information to request in premerger-notification forms: the statute's core provision specifically directs covered entities to "file notification pursuant to" the FTC's "rules," 15 U.S.C. § 18a(a); *see id.* § 18a(d)(1).

## 2. *The HSR Rules Are Not Unconstitutionally Vague*

Nor can KKR succeed in challenging the regulations as unconstitutionally vague. "The 'void for vagueness' doctrine is chiefly applied to criminal legislation." *Arriaga v. Mukasey*, 521 F.3d 219, 222 (2d Cir. 2008). "[E]conomic regulation is subject to a less strict vagueness test," in part "because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Under this "relaxed" test, *Comack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 213 (2d Cir. 2012) (citation omitted), a provision is unconstitutionally vague only "if it is so vague that it gives no warning to the challenger that his conduct is prohibited," *United States v. Sun & Sand Imports, Ltd.*, 725 F.2d 184, 187 (2d Cir. 1984). And "[s]tatutes and regulations . . . are not impermissibly vague simply because it may be difficult to determine whether marginal cases fell within their scope"; "[i]t is not unfair to require that 'one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'" *Id.* at 187-88 (quoting *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340 (1952)).

Where, as here, a challenged provision does not implicate the First Amendment or another "constitutionally-protected right," a party must clear an extremely high bar to bring a facial challenge, because "such challenges are permitted only when 'no set of circumstances exists under which the [law] would be valid.'" *Dickerson v. Napolitano*, 604 F.3d 732, 743 (2d Cir. 2010) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). To prevail on an as-applied challenge, KKR must show that "a statute is vague *as applied to the particular facts*" of its conduct, "for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18-19 (2010) (citation omitted) (emphasis added).

Here, KKR cannot succeed by pointing to some "ambiguity at the outer reaches of" Item 4, *United States v. Nadirashvili*, 655 F.3d 114, 122 (2d Cir. 2011), for "doubt . . . in less obvious cases does not render [a] standard unconstitutional for vagueness," *Arriaga*, 521 F.3d at 225 (quoting *Jordan v. De George*, 341 U.S. 223, 232 (1951)). Instead, KKR must show that Item 4 fails to provide "sufficiently definite warning" that its egregious and systemic alterations and omissions transgressed the regulation "when measured by common understanding and practices." *United States v. Coppola*, 671 F.3d 220, 235 (2d Cir. 2012). Under this standard, nothing in the regulation or administrative guidance could suggest that Item 4 permits KKR's systematic omissions, alterations, and wholesale failures—much less as a matter of law on a motion to dismiss. Because KKR's "conduct at issue falls within the core of" Item 4 and, more broadly, the regulation "provides sufficiently clear standards to eliminate the risk of arbitrary enforcement," KKR's claim of "arbitrary enforcement" likewise fails. *United States v. Wasylyshyn*, 979 F.3d 165, 176 (2d Cir. 2020).

**D. KKR Incorrectly Contends There Are No Repercussions for Submitting Incomplete and Inaccurate HSR Act Filings**

KKR equally misses the mark in arguing that it can make as many omissions or alterations in its HSR filings as it wishes without any potential penalties so long as it does not ultimately consummate the transaction. *See* Mot. 26-31. Based on this position, KKR asks the Court to dismiss Counts 11 and 13 of the Complaint, which seek penalties for KKR's incomplete HSR filings for the Equus I and TalentNeuron transactions. KKR ultimately sold Equus to a different buyer as part of the transaction underlying Count 12 (Equus II). Compl. ¶ 116-125. And KKR abandoned its proposed acquisition of TalentNeuron after the United States opened its investigation into KKR's HSR Act violations. *Id.* ¶ 16.

While correctly noting that "interpreting a statute . . . 'begin[s] with the text,'" KKR fails to quote the text. Mot. at 26. The HSR Act does not, as KKR paraphrases, impose statutory penalties against "persons who violate the Act," whose "one main prohibition" is the waiting period limitation in subsection (a). *Id.* Rather, the Act imposes a statutory penalty on "[a]ny person . . . who fails to comply with *any* provision of this section." 15 U.S.C. § 18a(g)(1) (emphasis added). "[R]ead naturally, the word 'any' has an expansive meaning." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008). By referring to "any provision," Congress clearly intended to reach beyond the waiting period requirement of the Act. "Had Congress intended to restrict" (g)(1) penalties to a particular "provision," like the waiting period limitation in subsection (a), "it presumably would have done so expressly as it did in the immediately following subsection." *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) (interpreting the meaning of "interest" in two adjacent subsections of the RICO statute). It did not. The penalties clearly apply to the violations alleged in the Complaint.

Applying these principles, KKR's misconduct fits squarely within the statute. The HSR Act directs that persons intending to acquire certain voting securities or assets submit a "notification pursuant to rules" issued by the antitrust agencies, which in turn are directed to specify the notification "be in such form and contain such documentary material and information relevant" as the agencies establish through notice-and-comment rulemaking. 15 U.S.C. §§ 18a(a), 18a(d)(1). When KKR submitted its defective notifications (or submitted nothing at all), it "failed to comply" with the obligation to include the requisite "documentary material." It therefore is liable for a civil penalty.

Besides contravening the text, KKR's interpretation "makes a hash of the scheme Congress devised." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). Under KKR's reading, a merging party can mislead or conceal information, withhold or alter documents, or otherwise make false representations—no matter how flagrantly—without penalty under the HSR Act so long as it does not close the transaction. It is no answer to say that certain criminal offenses may fill some of the gap: Congress intentionally created the HSR Act as a strict liability civil statute. 15 U.S.C. § 18a(g)(1).

The legislative history confirms Congress' intent to impose penalties for strict liability "failure[s] to comply" with the Act related to either consummated or unconsummated transactions. Congress considered and rejected earlier bills to establish a premerger notification system that contained penalty provisions expressly limiting monetary relief to "an acquisition *which has been consummated.*" *Merger Oversight and H.R. 13131, Providing Pre-Merger Notification and Stay Requirements, Before the Subcomm. on Monopolies and Comm. L.*, 94th Cong. 246 (1975) (emphasis added). A House subcommittee discussed one such bill from 1957 during hearings related to the HSR Act, and a House Judiciary Committee Report on the 1957

bill was included in the record of those hearings. *Id.* at 131-32, 238-49. As this bill reflects, Congress understood how to draft a penalty provision limited to consummated transactions but decided to adopt a broader provision when enacting the HSR Act.

A subsequent draft of the HSR Act included separate penalty provisions for (i) "fail[ing] to furnish information required to be submitted, pursuant to subsection (c)(1) of this section," and (ii) failing to comply with the waiting period requirements. S. 1284, 94th Cong., Title V, § 23(f) (Mar. 21, 1975). Later amendments combined the penalty provisions, removing distinctions between violations of particular provisions of the HSR Act to "mak[e] clear that the penalty provision . . . applies to *all* violations" of the section. 122 Cong. Rec. 16482 (June 3, 1976) (statement of Sen. Hart) (emphasis added). Congress thus understood that failures to furnish the requisite information could result in penalties without consummation of the transaction.

Indeed, there can be no dispute that the equitable remedy provision of the HSR Act applies pre-consummation because it authorizes certain forms of relief that are only relevant prior to the closing of a transaction. *See* 15 U.S.C. § 18a(g)(2) (requiring court to "extend the waiting period" that bars the closing of the transaction). There is no distinction between the text of subsections (g)(1) and (g)(2) indicating that one was intended to apply only to consummated transactions while the other was intended to apply to unconsummated transactions.

Bereft of support in the text or legislative history, KKR resorts to even less illuminating "extratextual considerations." *McGirt v. Oklahoma*, 591 U.S. 894, 915 (2020). *See* Mot. at 28-29. Neither supposed "statements" nor "historical practices" can "overcome" clear text. *Id.* at 916-17. And even if considered, these sources provide no guidance. KKR selectively quotes a banal statement buried in an FTC handbook stating the penalty for failing to file and two

statements from the Notice of Proposed Rulemaking specifying the definition of consummation and certain obligations under the Act. Mot. at 28-29 (quoting *HSR Introductory Guide I* at 12 (2024), https://www.ftc.gov/sites/default/files/attachments/premerger-introductory-guides/guide1.pdf; 43 Fed. Reg. at 33453; 78 Fed. Reg. 68705, 68705 (Nov. 15, 2013)). None of these statements purports to delimit when a party can be liable for civil penalties.

Nor does this enforcement action reflect a "radical change" in the Government's historical practices of enforcement. Mot. at 29. The United States has enforced the Act for so-called "gun jumping," where parties coordinate on business dealings before consummating a transaction. *United States v. Legends Hosp. Parent Holdings, LLC*, No. 1:24-cv-5927 (S.D.N.Y. Dec. 9, 2024); *United States v. Flakeboard Am. Ltd.*, No. 3:14-cv-4949 (N.D. Cal. Feb. 2, 2015). And last November, for example, the United States brought an enforcement action against a party for falsely certifying compliance with a second request before the consummation of that transaction. *See United States v. UnitedHealth Group, Inc.*, No. 1:24-cv-3267-JKB (D. Md. Nov. 12, 2024). The only case that KKR cites*, FTC v. McCormick & Co.*, No. 88-cv-01128 (D.D.C. Apr. 26, 1988), was brought under subsection (g)(2) seeking equitable relief enjoining the acquisition, not (g)(1) seeking monetary penalties, which explains why the FTC dismissed the enforcement action after the parties abandoned the deal: no further relief was required. The FTC's choice to dismiss an HSR Act claim seeking only equitable relief after the parties abandon a transaction is an act of prosecutorial discretion, not statutory interpretation. Most importantly, it carries no authority—persuasive or otherwise—over the instant action.

## V.     CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court

deny the Motion to Dismiss.


Dated: May 15, 2025

Respectfully submitted,

/s/ David Teslicko
DAVID TESLICKO
CATHERINE DICK
MICHAEL FREEMAN

United States Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 710-0114
David.Teslicko@usdoj.gov
Catherine.Dick@usdoj.gov
Michael.J.Freeman@usdoj.gov
*Attorneys for Plaintiff United States
of America*

**<u>Certificate of Compliance</u>**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules, as expanded by the Court's order of April 11, 2025, ECF No. 26. As measured by the word processing system used to prepare it, this memorandum contains 9,711 words.