**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

        *Plaintiff*,

    v.

KKR & CO. INC., KKR & CO. GP LLC,
KOHLBERG KRAVIS ROBERTS & CO. L.P.,
KKR AMERICAS FUND XII L.P., KKR
AMERICAS FUND XII (KESTREL) L.P., KKR
AMERICAS FUND XII (THRIVE) L.P., KKR
APPLE AGGREGATOR L.P., KKR CHORD IP
AGGREGATOR L.P., KKR CORE HOLDING
COMPANY LLC, KKR CORE II HOLDING
COMPANY LLC, KKR DCIF LOWER ENTITY
III SCSP, KKR GLOBAL IMPACT FUND SCSP,
KKR GLOBAL INFRASTRUCTURE
INVESTORS IV USD (APPLE) L.P., KKR
NORTH AMERICA FUND XIII SCSP, and KKR
OBSIDIAN AGGREGATOR LP,

        *Defendants*.

Case No. 1:25-cv-343-JHR
[rel. 1:25-cv-448-JHR]

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 3

I.     THE GOVERNMENT MISINTERPRETS THE HSR ACT. ................................ 3

    A.    The Government Ignores The Statutory Limitation Of "Necessary And Appropriate" Documents. ............................................................................ 3

        1.    *The statutory text restricts the government's authority.* .................... 3

        2.    *The government impermissibly rewrites the statute to expand its authority.* ........... 4

        3.    *"Necessary and appropriate" constrain agency authority.* ..................... 5

        4.    *The government fails to allege necessity for any document.* ................... 6

    B.    A Strict Liability Standard Does Not Govern Civil Penalties. ........................ 7

        1.    *Congress chose different compliance standards throughout the HSR Act.* ............. 7

        2.    *The government's own guidance contradicts strict-liability enforcement.* .............. 9

        3.    *The government's made-for-litigation interpretation deserves no deference.* .......... 9

    C.    The Government's Interpretations Create Absurd Results. ........................... 11

    D.    The Government Is Not Entitled To Equitable Relief. ................................. 12

II.    ITEM 4(c) EXCEEDS THE GOVERNMENT'S STATUTORY AUTHORITY AND IS UNCONSTITUTIONALLY VAGUE. ..................................................... 12

    A.    The Government Exceeds Its Regulatory Authority ....................................... 13

    B.    Item 4(c) Is Unconstitutionally Vague. ....................................................... 14

III.   ABANDONED TRANSACTIONS ARE NOT "ACQUISITIONS" SUBJECT TO CIVIL PENALTIES .............................................................................. 15

CONCLUSION ........................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Alabama v. Bozeman*,
   533 U.S. 146 (2001) ................................................................................................4

*Bates v. Long Island R.R.*,
   997 F.2d 1028 (2d Cir. 1993) ...............................................................................10

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) ..............................................................................................16

*CAB v. Delta Air Lines, Inc.*,
   367 U.S. 316 (1961) ................................................................................................5

*Chamber of Com. of U.S. v. Whiting*,
   563 U.S. 582 (2011) ..............................................................................................11

*Food Mktg. Inst. v. Argus Leader Media*,
   588 U.S. 427 (2019) ..............................................................................................16

*Liu v. SEC*,
   591 U.S. 71 (2020) ................................................................................................12

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) ........................................................................................10, 13

*McCutcheon v. FEC*,
   572 U.S. 185 (2014) ..............................................................................................16

*Nat'l Petrol. Refiners Ass'n v. FTC*,
   482 F.2d 672 (D.C. Cir. 1973) ...............................................................................5

*N.Y. Stock Exch. LLC v. SEC*,
   962 F.3d 541 (D.C. Cir. 2020) ...............................................................................6

*Pharm. Rsch. & Mfrs. of Am. v. FTC*,
   790 F.3d 198 (D.C. Cir. 2015) ...............................................................................6

*Rapanos v. United States*,
   547 U.S. 715 (2006) ..............................................................................................13

*Schweiker v. Wilson*,
   450 U.S. 221 (1981) ..............................................................................................11

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ..................................................................................... 9

*Slack Techs., LLC v. Pirani*,
    598 U.S. 759 (2023) ..................................................................................... 5

*Star Athletica, LLC v. Varsity Brands, Inc.*,
    580 U.S. 405 (2017) ..................................................................................... 16

*United States v. UnitedHealth Grp. Inc.*,
    No. 1:24-cv-03267 (D. Md. Nov. 12, 2024) ............................................... 16

*United States v. Messina*,
    806 F.3d 55 (2d Cir. 2015) .......................................................................... 12

*Urbont v. Sony Music Ent.*,
    100 F. Supp. 3d 342 (S.D.N.Y. 2015) ......................................................... 10

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014) ..................................................................................... 5

*Vorchheimer v. Philadelphian Owners Ass'n*,
    903 F.3d 100 (3d Cir. 2018) ........................................................................ 3

*West Virginia v. EPA*,
    597 U.S. 697 (2022) ..................................................................................... 14

*Weinstein v. Albright*,
    261 F.3d 127 (2d Cir. 2001) ........................................................................ 4

## Statutes

15 U.S.C. § 18a(a) ................................................................................................ 15

15 U.S.C. § 18a(a)(2) ........................................................................................... 15

15 U.S.C. § 18a(d)(1) ........................................................................................ 3, 6

15 U.S.C. § 18a(e)(1)(B)(i)(I) ............................................................................. 13

15 U.S.C. § 18a(e)(2) ............................................................................................ 8

15 U.S.C. § 18a(g)(1) ........................................................................................ 8, 12

15 U.S.C. § 18a(g)(2) ................................................................................... 8, 12, 15

18 U.S.C. § 1001 .................................................................................................. 16

## Other Authorities

122 Cong. Rec. 29341 ............................................................................................11

122 Cong. Rec. 30876 ............................................................................................11

43 Fed. Reg. 33450 (July 31, 1978) ......................................................................10

Black's Law Dictionary (12th ed. 2024) ..................................................................3

Bruce Hoffman, *"All" Means All: Submit Side Agreements with an HSR Filing*,
    FTC.gov (Dec. 20, 2017), https://www.ftc.gov/enforcement/competition-
    matters/2017/12/all-means-all-submit-side-agreements-hsr-filing ..............................4

FTC, Item 4(c) Tip Sheet (Nov. 28, 2016),
    https://www.ftc.gov/system/files/attachments/hsr-resources/4ctipsheet.pdf ..................2, 9, 13

George Cary, Speech at the ABA Annual Spring Meeting: Failure To Comply
    with the Hart-Scott-Rodino Act: Braveheart or Dead Man Walking? (Mar. 28,
    1996), https://www.ftc.gov/news-events/news/speeches/failure-comply-hart-
    scott-rodino-act-braveheart-or-dead-man-walking .........................................................4

Webster's Third New Int'l Dictionary (1961) ...........................................................3

William Blumenthal, General Counsel, FTC, Remarks before the Association of
    Corporate Counsel, *The Rhetoric of Gun-Jumping*, 2005 WL 3635346 (Nov.
    10, 2005) .........................................................................................................................9

## INTRODUCTION

Rejecting the Court's invitation to amend the Complaint to cure its deficiencies, the government doubles down. It advances a remarkable interpretation of the HSR Act pursuant to which an "acquisition" need not involve acquiring anything, and a "necessary" document need not contain relevant information. Based on this nonsensical reading, the government insists it is entitled to staggering penalties for purported premerger notification errors in potential transactions that did not close, or actual transactions the government *permitted* to close. Even now, it concedes the transactions do *not* violate the antitrust laws. And it does not allege that any of the purported errors would have affected its decisions, or even caused it to investigate further. The government's opposition ("Opp.," ECF No. 81) ignores the plain text of the statute and its fundamental purpose. It is silent as to the government's admission that the HSR filing requirements are "confusing" and lead to frequent errors. And it continues to press a novel theory that a decades-old statute—which authorizes the government to seek only "necessary and appropriate documentary material," and obliges parties only "substantially to comply" with this merger notification requirement—imposes strict liability for a good-faith failure to produce even one immaterial document.

The plain text of the HSR Act does not support this expansive view. The statute permits the government to request *only* documents that are "necessary and appropriate" to its antitrust review. It precludes the government from seeking documents that are "unreasonably cumulative, unduly burdensome, or duplicative." And it affirmatively *disavows* the need for strict compliance, including by requiring only that parties "substantially" comply with its notification requirement. The government whistles past these limitations, even though they appear on the face of the statute. It asks the Court to sanction an unsupported reading of the law that would authorize the government to demand burdensome document productions the Act prohibits, and to extract

draconian penalties based on inconsequential, inadvertent errors. The HSR Act does not grant the government such extravagant authority. The Complaint must be dismissed for this reason alone.

The government's contention that its extreme interpretation is entitled to deference is wrong as a matter of law. The HSR Act may be 50 years old, but the government's reading of it is brand new, and has never been tested in court. The government cannot cite *a single decision* supporting its claims that a statute that requires only "substantial compliance" before a merger is permitted to close, nonetheless imposes strict liability *after* closing for immaterial omissions. And no case supports the government's semantic gymnastics, pursuant to which *abandoned* transactions constitute "acquisitions" subject to multi-million-dollar penalties.

Likewise, the government simply disregards its admissions that Item 4(c) is "confusing" because its "broad language is subject to a range of interpretations," and that filers "commonly" get its requirements wrong by producing documents "that are not in fact responsive" or by "overlook[ing]" documents that purportedly are. FTC, Item 4(c) Tip Sheet at 1 (Nov. 28, 2016), https://www.ftc.gov/system/files/attachments/hsr-resources/4ctipsheet.pdf ("Item 4(c) Tip Sheet"). These concessions are fatal to the government's case. Due process requires clear notice of prohibited conduct. The government, by its own account, fails to provide that. This, too, is grounds for dismissal.

The Court should reject the government's efforts to sidestep the plain language and purpose of the HSR Act, and to turn a simple notification requirement into an onerous document production trap that will substantially harm businesses and chill mergers and acquisitions in the United States. The government must enforce the laws Congress passed, not the laws it wishes Congress passed. The HSR Act is a notice provision that requires filers to provide documents necessary for the government to determine whether an acquisition may, if consummated, violate the antitrust laws.

The Complaint does not allege that the government was deprived of that opportunity, and must be dismissed.

## ARGUMENT

**I.    THE GOVERNMENT MISINTERPRETS THE HSR ACT.**

### A.    The Government Ignores The Statutory Limitation Of "Necessary And Appropriate" Documents.

1.    *The statutory text restricts the government's authority.*

In crafting the HSR Act, Congress circumscribed the government's authority to seek documents as part of premerger notifications.  The Act does not authorize the government to demand documents merely because they may be relevant to the antitrust implications of a transaction.  Rather, it provides that the government "*shall* require that the notification … contain such documentary material and information relevant to a proposed acquisition *as is necessary and appropriate* to enable [it] to determine whether such acquisition may, if consummated, violate the antitrust laws."  15 U.S.C. § 18a(d)(1) (emphases added).

"Dictionaries, statutes, case law, treatises, literature, and even songs cast light on the ordinary meaning of 'necessary.'"  *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018).  It is that which is essential or "required."  *Id.*; *accord* Black's Law Dictionary (12th ed. 2024) ("necessary" means "needed for some purpose or reason; essential"); Webster's Third New Int'l Dictionary (1961) ("that cannot be done without; that must be done or had; absolutely required").  "Necessary" documents are not documents the government would like to have—they are those it cannot do without.  *Vorchheimer*, 903 F.3d at 106.

This limitation is "mandatory, not permissive."  *Weinstein v. Albright*, 261 F.3d 127, 137 (2d Cir. 2001).  Congress's use of "shall" is a "command" that the FTC require an HSR notification form along the lines described in Section 18a(d)(1).  *Alabama v. Bozeman*, 533 U.S. 146, 153

(2001) (cleaned up).  Far from granting "broad rulemaking authority," as the government contends, Opp. 17, the enabling language cabins the documents the government may seek to those *essential* to its review.[1]

        2.     *The government impermissibly rewrites the statute to expand its authority.*

The Complaint fails to allege that *any* of the purportedly missing documents were necessary to the government's premerger antitrust review.  Rather than accept the Court's invitation to address this deficiency by amending its Complaint, the government tries to rewrite the statute.  It contends that the HSR Act "directs the antitrust agencies to issue rules dictating which *types* of 'documentary material and information' must be included in premerger notifications based upon their judgment of what is 'necessary and appropriate' to enable effective antitrust review."  Opp. 7 (original emphasis).  But the statute says *nothing* about "types of" documentary material.  The government inserts two imaginary words because without them, there is no justification for a Complaint that seeks to penalize KKR for not producing broad categories of documents defined only by their subject matter—and not always even that.  *See, e.g.*, Compl. ¶ 105 (describing document that "included analyses of valuation and investment returns"); ¶ 130 (alleging KKR "omitted … three other documents that should have been included").  And the word

---

[1]    These limitations have long been accepted.  For example, in the very speech the government cites for its "full compliance" position, George Cary, then-Director of the FTC's Bureau of Competition, acknowledged:  "The HSR Act and the Rules call **only for the data** to be submitted with the HSR Form that is **necessary** to make a preliminary antitrust analysis of a particular transaction."  Speech at the ABA Annual Spring Meeting: Failure To Comply with the Hart-Scott-Rodino Act: Braveheart or Dead Man Walking? (Mar. 28, 1996), https://www.ftc.gov/news-events/news/speeches/failure-comply-hart-scott-rodino-act-braveheart-or-dead-man-walking.  Likewise, the government misleadingly quotes Bruce Hoffman, then-Director of the FTC's Bureau of Competition, who was not addressing innocent errors under Item 4, but parties intentionally concealing parts of their merger agreements under a *different* part of the HSR form, Item 3(b).  *See* Bruce Hoffman, *"All" Means All: Submit Side Agreements with an HSR Filing*, (Dec. 20, 2017), https://www.ftc.gov/enforcement/competition-matters/2017/12/all-means-all-submit-side-agreements-hsr-filing.

"such" pins this limitation to the *specific set* of relevant documents and information the HSR notification may require: those that are "necessary and appropriate" to determining whether the proposed acquisition violates antitrust laws, and nothing more. *See, e.g.*, *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 767 (2023) (statute's repeated use of the word "such" "narrow[s] the law's focus"). Nor, in any event, does the statute permit the government to require "*all* such" materials, as the government's construction suggests.

An agency "may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014). And when, as here, an agency finds itself needing to "edit" statutory provisions to maintain its preferred interpretation, this "should have alerted [the agency] that it had taken a wrong interpretive turn." *Id.* What matters is "not what the [agency] thinks it should do but what Congress has said it can do." *Nat'l Petrol. Refiners Ass'n v. FTC*, 482 F.2d 672, 674 (D.C. Cir. 1973) (quoting *CAB v. Delta Air Lines, Inc.*, 367 U.S. 316, 322 (1961)). The government cannot salvage insufficient pleadings by rewriting the statute.

3.    *"Necessary and appropriate" constrain agency authority.*

The government misreads *Michigan v. EPA* as supporting its allegedly "capacious" regulatory authority, Opp. 17, 23, when the Court held precisely the opposite: the terms "appropriate and necessary" constrain the government's discretion. 576 U.S. 743, 752 (2015) (EPA may regulate "if (but only if) the Agency finds regulation 'appropriate and necessary'"). The Court described as "capacious" the *limitations* on the agency's authority. *Id.* at 752–53 ("[Statute] directs EPA to determine whether '*regulation* is appropriate and necessary' .... [I]t is unreasonable to read an instruction to an administrative agency to determine whether 'regulation is appropriate and necessary' as an invitation to ignore cost." (original emphasis)). As the D.C. Circuit explained, *Michigan* "makes it plain that the mere reference to 'necessary' or 'appropriate'

in a statutory provision … does not afford the agency authority to adopt regulations as it sees fit." *N.Y. Stock Exch. LLC v. SEC*, 962 F.3d 541, 554 (D.C. Cir. 2020). Here, too, the terms "necessary and appropriate" *limit* the government's authority, requiring that it "shall" be permitted to demand documents only if they are *essential* to "determine whether such acquisition may, if consummated, violate the antitrust laws."

The government's reliance on *Pharmaceutical Research & Manufacturers of America v. FTC*, 790 F.3d 198 (D.C. Cir. 2015), Opp. 17, is equally misplaced. There, the court addressed whether anything "in the plain meaning, context, or legislative history of the Act unambiguously preclude[d] the FTC from promulgating a rule, the substance of which is clearly within its delegated authority, merely because the rule focuses on a specific industry." *Id.* at 200. The court found that, when the statute "did not address the 'precise question at issue'" the agency acted within its discretion in filling the gap. *Id.* But there is no gap here, so the question is different: whether the HSR Act means what it says when it *requires* the antitrust agencies to *limit* their demands to documents that are "necessary and appropriate" to evaluating the antitrust implications of a transaction. The answer is clear: it does.

4.     *The government fails to allege necessity for any document.*

The government contends that the statute does *not* "require a document-by-document analysis of necessity," Opp. 7, but ignores that the government may demand only "such documentary material and information relevant to a proposed acquisition *as is necessary and appropriate* to enable [it] to determine whether such acquisition may, if consummated, violate the antitrust laws." 15 U.S.C. § 18a(d)(1). Whether document-by-document or otherwise, it is the *government's* burden, in alleging a violation, to plead that the materials it contends were improperly omitted were, individually or collectively, "necessary and appropriate" to its premerger review. By definition, "necessary" documents are those *needed* for the government to determine

whether an acquisition may, if consummated, violate the antitrust laws.  *See supra* Part I.A.1.  The Complaint does not allege that the government needed *any* of the purportedly omitted documents to make that determination.

Indeed, far from meeting its statutory burden, the government *admits* that only "*some of the documents altered or withheld by KKR *related to* the core issues of antitrust review: competitive concerns.*"  Opp. 16 (emphasis added).  If only *some* documents even *related to* competitive concerns, then *most* did *not*.  Documents that do not relate to competitive concerns by definition cannot be "necessary and appropriate" to premerger antitrust review.  More importantly, merely "relating to" competitive concerns is not enough.  The government must also plead that the allegedly omitted documents would have impacted its decisions.  The government did not so plead because it *cannot* justify such an assertion here.

After a three-year investigation during which it gathered *more than one million* pages of documents, the government has identified *not one* document that it alleges would have impacted its decision to approve a transaction or investigate it further.  Nor does it allege that the purportedly omitted documents *collectively* would have impacted its decision.  The government's failure to allege that *any* of the omitted documents were "necessary" to its premerger review is fatal to its claims.

**B.    A Strict Liability Standard Does Not Govern Civil Penalties.**

    1.    *Congress chose different compliance standards throughout the HSR Act.*

The government argues that "Congress's choice of divergent language" in different provisions of the HSR Act "dictates different standards."  Opp. 12.  But this uncontroversial principle contradicts the government's contention that the HSR Act is a strict-liability statute:

- Section (g)(1) permits financial penalties for failures "to comply with any provision" of the statute;

- Section (g)(2) permits equitable relief for failures "substantially to comply with the notification requirement … within the waiting period"; and

- Section 18a(e)(2) provides that, for second requests, the government may extend the waiting period, if, among other reasons, "such request is not *fully complied* with" (emphasis added).

Congress may be presumed to have *chosen* the "fully complied with" language for Section 18a(e)(2), and to have purposefully *omitted it* from Section 18a(g)(1). Indeed, Section 18a(e)(2) is the only provision in all of Title 15 where the adverb "fully" modifies "comply." By the government's own logic, Congress's choice is dispositive.

The statutory structure confirms KKR's reading. Section (g)(1) uses broader language than (g)(2) because (g)(1) covers all possible violations of the HSR Act—including violations where "substantial compliance" would be nonsensical, such as failing to file at all or closing before the waiting period expires. But for notification deficiencies like Item 4 omissions, whether a party "fails to comply" under (g)(1) necessarily incorporates the substantial compliance standard. Otherwise, a court could find under (g)(2) that parties "substantially complied" with the notification requirement by providing sufficient information to close their transaction, but the government could later contend, post-closing, that they are subject to huge daily penalties under (g)(1) for not *perfectly* complying with the statute. This cannot be the law. Congress did not intend, in imposing a simple notification requirement for expeditious premerger review, to enable after-the-fact regulatory "gotcha" for the inadvertent omission of documents unnecessary to the government's antitrust review. And the government has *never* before claimed that Item 4 demands perfect compliance. Rather, it has acknowledged that filing errors are common.[2]

---

[2] Even in gun-jumping cases, the government applies a fact-intensive analysis rather than strict liability. *See* William Blumenthal, General Counsel, FTC, Remarks Before the Association of Corporate Counsel, *The Rhetoric of Gun-Jumping*, 2005 WL 3635346, at *1 (Nov. 10, 2005) ("[T]ypical beneficial ownership analysis under Section 7A is highly fact-specific.").

2.    *The government's own guidance contradicts strict-liability enforcement.*

The government has *no answer* to its concession that the filing requirement is "confusing" because Item 4(c)'s "broad language is *subject to a range of interpretations*" and leads to frequent mistakes.  Mot. 8 (citing Item 4(c) Tip Sheet at 1 (emphasis added)).  And it does not dispute that it has never understood the Act to require comprehensive litigation-style discovery of the type KKR engaged in during the government's three-year investigation.  *See* Mot. 6-7 (quoting FTC Commissioner Holyoak).  These are *the government's own admissions*.  They are binding.  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (parties may "properly resort for guidance" to the "rulings, interpretations, and opinions of the [responsible agency] … [which] constitute a body of experience and informed judgment").  And they contradict its new approach.  Having admitted that its requirements are confusing and lead to errors, the government cannot suddenly contend that such errors warrant massive penalties.  And having disclaimed the need for exhaustive discovery, it cannot suddenly contend that parties are strictly liable for overlooking even one document (which it does not even contend was essential).  This nonsensical position would also chill merger and acquisition activity by imposing massive burdens on filing parties—contrary to Congress's intent in requiring only "substantial compliance" with a notice provision that requires only "necessary" documents and prohibits "unreasonably cumulative, unduly burdensome, or duplicative" demands.

3.    *The government's made-for-litigation interpretation deserves no deference.*

The government's new interpretation is not entitled to deference.  "[R]espect to Executive Branch interpretations of federal statutes" is warranted only when the "interpretation was issued

roughly contemporaneously with enactment of the statute and remained consistent over time." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 370 (2024).  Neither condition is satisfied here.[3]

Interpretations of the HSR Act that the government issued contemporaneously with its enactment are inconsistent with the government's current position.  Those regulations provide that the purpose of Item 4 is to provide the government a "*reasonable number* of *genuinely important* documents*" to investigate whether a transaction is anticompetitive.  43 Fed. Reg. 33450, 33526 (July 31, 1978) (emphasis added).  They acknowledge that "agencies may not gain access to some relevant documents at the time of their initial review."  *Id.*  And they remain good law.  The government cites *no case*, across half a century of HSR enforcement, that supports penalties for failing to include "all required documentary material."  Instead, it invokes three *consent agreements* for a fraction of the amount it seeks here.  Opp. 12.  But a settlement "does not mean that the claim had merit or that it would have withstood scrutiny." *Urbont v. Sony Music Ent.*, 100 F. Supp. 3d 342, 353 (S.D.N.Y. 2015); *Bates v. Long Island R.R.*, 997 F.2d 1028, 1038 (2d Cir. 1993) ("A settlement neither requires nor implies any judicial endorsement of either party's claims or theories." (cleaned up)).  All that can be said is that certain HSR filers opted not to challenge the government in the face of modest penalties.

Lacking support in the statute's text or judicial precedent, the government cobbles together a smattering of legislative history.  But "Congress's authoritative statement is the statutory text, not the legislative history." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 599 (2011).  And even the legislative record undermines the government's position.  For example, the government improperly assumes that Senator Hart's statement acknowledging that "disagreements may arise

---

[3]    The government's assertion that civil penalties can be imposed in connection with transactions that were abandoned is entitled to no deference for the same reason. *See infra* Part III.

over whether there has been absolute and complete compliance," Opp. 13 (citing 122 Cong. Rec. 29341-42) represents the views of the entire Congressional body, Opp. 13 ("Congress made clear …."). But Congress "rarely acts with a single mind." *Schweiker v. Wilson*, 450 U.S. 221, 244 n.6 (1981) (Powell, J., dissenting). Likewise, the government omits to note that, just eight days later, Senator Hart, when presenting a compromise bill, clarified that it "does *not* require absolute and complete compliance." 122 Cong. Rec. 30876.

### C.    The Government's Interpretations Create Absurd Results.

Applying the government's extreme interpretations underscores their absurdity. According to the government, a deal it *permitted* KKR to close, and which posed no competitive concerns, should now result in massive penalties because KKR allegedly omitted *one document* to which the government contends it was entitled (but which it does *not* allege would have even potentially impacted its decision to approve the transaction or investigate it further).

This is no mere hypothetical. Count 12 alleges exactly this: that KKR omitted *one document* from the filing for the Equus-APM merger. Compl. ¶ 125. That document allegedly "included an analysis of strategic expansion plans." *Id.* The government does *not* allege that the document was "necessary" to its review. Similarly, Count 14 alleges that "two other documents … should also have been included in [the] HSR filing" for the Minnesota Rubber transaction. Compl. ¶ 135. Again, the government does *not* allege that either document had the potential to affect its analysis. Nor has it changed its view that either deal was permissible.

There is no limiting principle to the government's position, which would theoretically permit penalties for a typographical error on the HSR form. Courts routinely reject such absurd statutory interpretations. *See, e.g.*, *United States v. Messina*, 806 F.3d 55, 70 (2d Cir. 2015)

(avoiding interpretations that "produce absurd results" when "alternative interpretations consistent with the legislative purpose are available").[4]

### D.    The Government Is Not Entitled To Equitable Relief.

Finally, the government's assertion that it is entitled to equitable relief provides another independent basis to reject its interpretations.  Opp. 4; Compl. ¶ 144.  In the nearly fifty years that the HSR Act has been law, no court has *ever* applied Section (g)(2) to grant equitable relief post-closing.  The government acknowledges as much, noting that Section (g)(2) "authorizes certain forms of relief that are only relevant prior to the closing of a transaction."  Opp. 30.  Plus, the government asserts that financial penalties under Section (g)(1) are proper when injunctive relief is no longer "realistic"—which occurs *after* a merger has closed.  Opp. 15.  But even that is not accurate.  After a merger has closed, the government may seek to unwind it under either the Clayton Act or the Sherman Act, which the government has not sought to do here.[5]

## II.    ITEM 4(c) EXCEEDS THE GOVERNMENT'S STATUTORY AUTHORITY AND IS UNCONSTITUTIONALLY VAGUE.

KKR does not, as the government contends, seek "to abolish the premerger review notification process in existence since 1978."  Opp. 21.  Rather, the government seeks to *expand* the HSR Act's requirements—not through regulation, but through litigation.  In so doing, it

---

[4]    The government's unreasonable approach is also exemplified by its belated attempt to seek penalties for Applovin and Adjust, which involved a complicated restructuring among existing stockholders.  Compl. ¶¶ 136-143.  KKR discovered the issue itself, reported it to the FTC, and refiled HSR in 2021, while asking the FTC not to impose penalties under longstanding policy for such situations.  The government sat silently for three years before exhuming those transactions here.

[5]    Nor is disgorgement available.  Equitable remedies may not be punitive.  They are strictly available to provide redress to victims.  *Liu v. SEC*, 591 U.S. 71, 79 (2020).  The Complaint identifies no victims, because there are none.

exceeds its statutory authority, and asserts violations of rules that are overbroad, vague, and arbitrarily applied.

### A.    The Government Exceeds Its Regulatory Authority.

Item 4(c) requires filers to submit "*all* studies, surveys, analyses and reports which were prepared" for the purpose of evaluating aspects of the merger that could bear on competition.  Item 4(c) Tip Sheet at 1 (emphasis added).  But the HSR Act permits the government to require *only* such documents as are "necessary and appropriate" to its premerger review.  A demand for "all" documents cannot be squared with a limitation to requiring *only* "necessary and appropriate" documents.  Nor is it consistent with the statute's prohibition, even for second requests, on "unreasonably    cumulative,    unduly    burdensome,    or    duplicative"    demands.  15 U.S.C. § 18a(e)(1)(B)(i)(I).  *All* documents necessarily includes duplicative documents.  The government's position includes documents that may only be located through a burdensome forensic search.  And it includes documents that are immaterial.

It cannot be the case that the government may *not* demand cumulative or duplicative materials, or burdensome searches, in the context of a far-reaching second request, but *may* do so for an initial filing.  The government's silence on this point speaks volumes.

Unable to justify the contested regulations as "necessary and appropriate," the government contends that the Court should defer to the requirements of Item 4(c) because it was drafted contemporaneously with the statute and has remained "largely the same."  Opp. 25.  But the fact that a regulation is old does not "insulate[] disregard of statutory text from judicial review."  *Rapanos v. United States*, 547 U.S. 715, 752 (2006).  Rather, "the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits."  *Loper Bright*, 603 U.S. at 395.

The government also attempts to skirt judicial review by claiming that KKR improperly invokes the major questions doctrine. Not so. When, as here, "the statute at issue is one that confers authority upon an administrative agency, that inquiry must be 'shaped, at least in some measure, by the nature of the question presented.'" *West Virginia v. EPA*, 597 U.S. 697, 721 (2022). The government fails to explain how the requirements of Item 4(c), as it construes them, are "necessary or appropriate" to its premerger review, and not "unreasonably cumulative, unduly burdensome, or duplicative"—save to argue that they are less burdensome than other alternatives it considered. Opp. 18, 23. But that the government contemplated even more improper requirements does not mean that the requirements it adopted are consistent with the statute.

**B.    Item 4(c) Is Unconstitutionally Vague.**

Nor does the government illuminate what Item 4(c) requires. The government is silent in the face of its admissions that Item 4(c) is "confusing," contains "broad language [that] is subject to a range of interpretations," and results in "thousands of inquiries each year" and frequent filing errors. Mot. 22. The mere fact that the FTC has promulgated over a *hundred* informal and contradictory guidelines purporting to clarify Item 4(c) confirms its unconstitutional vagueness. The government contends that this is nothing more than "'ambiguity at the outer reaches' of Item 4," Opp. 27, and faults KKR for not alleging that every instance of this haphazard guidance applies here, Opp. 19—though that is not the standard for a facial challenge. But the government's own admissions make plain that Item 4(c) is an amorphous regulation that fails to inform filers of what it requires.

The government spends just one sentence addressing the arbitrary enforcement prong of the vagueness inquiry, claiming that "KKR's conduct at issue falls within the core of Item 4," Opp. 27 (cleaned up), while declining to define what that core is. To the extent Item 4 has a "core," it is the requirement that a filer provide the antitrust authorities with notification necessary for

them to determine whether to allow a merger to close, or to investigate the transaction's competitive aspects further.  *See supra* Part I.A.  The Complaint never alleges that the government was deprived of that opportunity, and thus the Complaint must be dismissed.

## III.  ABANDONED TRANSACTIONS ARE NOT "ACQUISITIONS" SUBJECT TO CIVIL PENALTIES

The government's defense of its newfound theory that the HSR Act countenances civil penalties on aborted transactions is without merit.  Opp. 28-31.

The government does not dispute that the operative verb in Section 18a(a), "acquire," refers to completed transactions, not attempts, and that—in contrast to other provisions of federal antitrust law—the HSR Act does not contain the word "attempt."  Mot. 26-28.  Instead, the government again seeks to rewrite the statute, claiming that it "directs that persons *intending*" to make an HSR-reportable transaction "submit a 'notification pursuant to rules'" issued by federal agencies.  Opp. 29 (emphasis added).  But Section 18a(a) says nothing about "intent."  The submission of an HSR notification is not a standalone requirement but part of a lengthy conditional that, *inter alia*, asks whether a person has "acquire[d]" certain securities or assets.  15 U.S.C. § 18a(a).  The government can no more bring an action against a person who has not completed an HSR-reportable transaction than it could against a person who did not meet the HSR threshold for holding an aggregate amount of voting securities, *id.* § 18a(a)(2).[6]

Lacking textual support, the government again turns to policy and legislative history.  Neither is availing.  As for policy, the government expresses concern about false representations, Opp. 29, but concedes that federal law already regulates such conduct, *see, e.g.*, 18 U.S.C. § 1001.  Given those prohibitions, the government's position amounts to unwarranted "prophylaxis-upon-

---

[6]  The government also references Section 18a(g)(2), but that subsection is cabined to "equitable" remedies for prospective violations.

prophylaxis." *McCutcheon v. FEC*, 572 U.S. 185, 221 (2014) (quotation omitted).  Far from "mak[ing] a hash" of public policy or congressional intent, Opp. 29 (quotation omitted), KKR advocates the same reading of the Act that courts, treatise writers, and the *government* have all embraced, Mot. 29-30.[7]

As for legislative history, it cannot "muddy the meaning of clear statutory language." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019).  Congress's rejection of earlier proposals is of little interpretive value, *see Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 408 (2017), particularly when the relevant language accords with the text of the Act—*i.e.*, the result of a person "acquir[ing]" securities or assets under Section 18a(a) is "an acquisition *which has been consummated*," Opp. 29 (citation omitted).  And the government has no answer for the committee reports that demonstrate Congress's focus on regulating completed, not attempted, transactions.

The government falls back on its own litigation positions, Opp. 31, but those are irrelevant when the government "itself has articulated no [formal] position on the question," *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988).  The only cases the government cites where penalties were imposed absent an acquisition are gun-jumping cases.  Opp. 31.  But those cases turn on whether there was a *constructive acquisition*, and are the exception that proves the rule. The government identifies just *one* other example where it sought civil penalties for a transaction that did not close.  *United States v. UnitedHealth Grp. Inc.*, No. 1:24-cv-03267 (D. Md. Nov. 12, 2024), ECF No. 1.  That case was filed nearly contemporaneously with this one and remains pending, confirming that the government's position is newly fashioned.

---

[7]  The government cannot brush aside its own statements as "extratextual considerations." Opp. 30; *see* Mot. 28-29.

The HSR Act simply does not permit civil penalties for abandoned transactions.  The Court should dismiss Counts 11 and 13.

## **CONCLUSION**

For these reasons, and those detailed in KKR's opening brief, KKR respectfully requests that the Court dismiss the Complaint.

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

DATED:  June 2, 2025

By:        /s/  *William A. Burck*
William A. Burck
Michael D. Bonanno (*pro hac vice*)
1300 I Street, N.W., Suite 900
Washington, DC 20005
Tel: 202.538.8000
williamburck@quinnemanuel.com
mikebonanno@quinnemanuel.com

Andrew J. Rossman
Stephen E. Frank (*pro hac vice*)
Mario O. Gazzola
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
295 Fifth Avenue
New York, NY 10016
Tel: 212.849.7000
andrewrossman@quinnemanuel.com
stephenfrank@quinnemanuel.com
mariogazzola@quinnemanuel.com

John Bash (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
300 West 6th St., Suite 2010
Austin, TX 78701
Tel: 737.667.6100
johnbash@quinnemanuel.com

D. Bruce Hoffman (*pro hac vice*)
Ryan Shores (*pro hac vice*)
C. Lawrence Malm
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2112 Pennsylvania Avenue, NW
Washington, D.C. 20037
Tel: 202.974.1500
bhoffman@cgsh.com
rshores@cgsh.com
lmalm@cgsh.com

Lina Bensman
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, New York 10006
Tel: 212.225.2000
lbensman@cgsh.com

Charles F. Rule (*pro hac vice*)
Deborah Garza (*pro hac vice*)
Daniel J. Howley
**RULE GARZA HOWLEY LLP**
901 Seventh Street, NW
Suite 600
Washington, D.C. 20001
Tel: 202.843.9280
rule@rulegarza.com
garza@rulegarza.com
howley@rulegarza.com

*Counsel for Defendants*

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

I, William A. Burck, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that this Memorandum of Law was prepared using Microsoft Word and that the document contains 4,990 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the foregoing statements are true and correct. Executed on this 2nd day of June, 2025 in New York, New York.

   <u>/s/  *William A. Burck*</u>
William A. Burck
